By the Court, Jones, J.
The first question to be determined is : Assuming the defendants to be entitled, on the merits, to the relief they ask, have they pursued the proper course to obtain it ?
Under the law as it stood in this state prior to the constitution of 1846, a decision by a circuit judge refusing .to postpone the trial of a cause, on the ground of the absence of material witnesses, was regarded as so far affecting a substantial right as to be subject to review, and, if erroneous, to reversal. (Brill v. Lord, 14 John. 341. Ogden v. Payne, 5 Cowen, 15. Hooker v. Rogers, 6 id. 577. People v. Vermilyea, 7 id. 369, cited from p. 385.)
There are many decisions as to what are and what are not sufficient causes to entitle a defendant to a postponement, as to the papers and their contents on which he should apply, as to what circumstances will justify a denial of the motion, and what terms can be imposed as a condition of granting it, and the subject occupies considerable space in the works of the various text writers on Practice. (Gra. Prac. 284-289.) If the judge had uncontrolled discretion to grant or refuse a postponement, these numerous decisions would never have been called forth, nor would *28 learned text writers have devoted so much space to the discussion of the subject.
I do not find that the Code, or any legislative enactment or judicial decision, has altered the law as it stood, in this respect, prior to 1846. The power of a judge, sitting at the trial of a common law action, to grant or refuse a postponement, is not now, any more than it was then, within his uncontrolled and uncontrollable discretion; but that power must still be exercised according to the established rules and principles; and his decision is subject to review, and, if erroneous, to reversal; unless the right to such review has been taken away. Two questions then arise: Has such right been taken away? If not, in what mode, and by what course of procedure, can such review be now obtained? Before considering these questions, it will be well to inquire whether, as this is an action which would formerly have been a suit in equity, the defendant, under the present system, was entitled to a postponement of the trial, on the same grounds, and for the same reasons, as a defendant to an action at law is entitled to a postponement thereof; and,' whether a decision denying such postponement, in an action of this character, is subject to review, the same as a similar decision in an action at law.
I have been unable to find any decisions by the late court'of chancery upon the subject of putting off the hearing of a suit by reason of the absence’ of witnesses, or as to whether a decision refusing such postponement is subject to review. From, the nature of the proceedings in equity, one could hardly expect to find such decisions.
As an almost invariable rule all the testimony in an equity suit was taken, prior to the hearing, before an officer of the court, under an order to produce witnesses within forty days. This time could be extended once, ex parte *29 and after that could be further extended upon notice. (Hoff. Ch. Pr. 406.) When the cause came to a hearing, it was heard upon the written testimony of the witnesses as taken by this officer. It necessarily follows that motions to put off a hearing by reason of the absence of witnesses, would rarely (and but for the exceptions hereafter mentioned, would never) arise. All motions for time to obtain the testimony of witnesses would necessarily arise on application to extend the time of the running of the order to produce witnesses. I find it laid down in a standard work on equity practice, without the citation of any decisions to support the proposition, that the court will grant one extension of time, ex parte, on being satisfied that no unreasonable delay has taken place in taking the testimony, or upon some excuse for neglect, as sickness, or unavoidable absence of the client or solicitor, (Hoff. Ch. Pr. 467;) as a further extension could be obtained on special motion, upon notice to the adverse party, it necessarily follows that when a reasonable ground for a further extension was shown, it would be granted. What would be a reasonable ground for such further extension we are not informed by any decisions in this state, but it may be fairly deduced from the practice of the court in granting an extension, ex parte, that the same grounds which authorized such order ex parte, would, if satisfactorily established, after opposition from the adverse party, call for a further extension.
Thus the principle of the rule upon which courts of law acted in postponing trials was equally applicable in courts of equity; and that principle was, to give a party who is guilty of no negligence a reasonable opportunity to produce his witnesses. A court of equity surely cannot be more rigorous than a court of law, in its requirements of a party, who seeks a further opportunity to procure his *30 testimony. It is, therefore, safe to say that a court of equity would always extend the time of the order to produce witnesses^ when a case was .presented such, as would call on a court of law to put off a trial.
As there are no decisions concerning the proceedings to be taken on an application for an extension of the order to produce witnesses, so there are none on the question as to whether a decision denying such application can be reviewed, or if it can be, how it is to be reviewed; but the power to review and the mode of such review is apparent from the plenary powers of the chancellor who had entire control over every act and order of the vice-chancellors by means of an appeal. (Hoff. Ch. Pr. 3.) Under so full a power as the chancellor possessed, it would be singular, if the question of his supervisory power over so important an order, as the prevention of a party from producing his testimony, had ever been mooted.
It may be, that if the chancellor himself denied a motion to extend an order to produce witnesses there could be no review; it is manifest that in such case there could be no review in the Court of Chancery, for the chancellor was the head of that court and no other court could have power to review unless given by statute; if, then, in such case there ■ could be no review, it resulted from the fact that the legislature did not see fit to give an appeal in such cases to the court of errors. But the fact, that a right to a review of a decision made in one court is not given to a party, by way of appeal to another court, does not militate against the existence of such right in the court in which the decision was made.
I have before said, that, but for exceptions to be mentioned, a motion to put off a hearing by reason of absence of witnesses would never arise. These exceptions are that some matters were allowed to be proved orally at *31 the hearing, and that, under the Revised Statutes, (2 R. S. 180, 1st ed.) an examination of witnesses might have been had before a vice-chancellor, in which case, by rules established by the chancellor, the testimony was to be taken, either in the mode adopted at nisi prius, or in that in which an examiner took it; the examination was to proceed de die in diem; if a material witness could not be procured at the time and place assigned, the vice-chancellor might postpone the taking of the testimony to some future day, on payment of costs or otherwise in his discretion, and upon such terms and conditions as he might think proper.
In the first of those, cases it might, it is true, become necessary to move a postponement of the hearing, on the ground of the absence of a witness; and in the second, to move a postponement of the examination. The absence of decisions upon motions to postpone made' in those two cases, is not at all surprising. In the last, even an examination before a vice-chancellor was very rare, so much so, that, since the year 1830, the assistant register never knew an instance. Such examination, moreover, was never granted, except in special cases, and was then set down for a particular time and place. It is hardly probable that counsel, in such special cases where the day assigned would naturally be arranged to suit their convenience and that of the witnesses, would ever be unprovided with their witnesses, except for some unforeseen matter occurring after the assignment of the day. In the first case, proof at the hearing was confined to the verification of exhibits and was scarcely ever permitted, except when mere handwriting was the only thing to be established. With such a limited area for the introduction of oral proof at the hearing, occasions, requiring a postponement by reason of the absence of witnesses, could rarely arise. *32 If, in either of those cases, a motion for a postponement had become necessary, I think there can be but little question, it would have been disposed of on principles analogous to those which obtained on an application for an extension of an order to produce witnesses, and by that analogy a decision denying the motion would have been subject to the supervisory power of the chancellor.
It is thus apparent that the mere fact of this being a case which would formerly have been a suit in equity, does not render either the principle, that a party should have a reasonable opportunity to procure his testimony (which principle lies at the foundation of the common law rules relative to postponing trials,) or the common law principle that a denial of such an opportunity is reviewable, inapplicable to it. In fact these principles obtained to the same (if not to a greater) extent in equity, as in courts of law; the only substantial difference being, that in equity they were almost invariably invoked on a motion for time to produce witnesses, while at common law they were invoked when a cause was called for trial by a motion for a postponement. This difference was a necessary consequence of 'the modes adopted by each court for the trial and disposal of issues.
But now the cumbrous machinery through which an issue of fact was disposed of in the court of chancery, consisting of orders to produce witnesses, taking the testimony of the witnesses in writing before an officer of the court, moving to suppress the depositions, and finally hearing the cause on the written testimony remaining after all motions to suppress, expunge and re-examine had been disposed of, is, with the court of chancery, swept away, and a much more simple mode of trial similar to that at nisi prius substituted.
The trial of an issue of fact in an equity suit is now brought on and conducted in the same way as a similar *33 issue in an action at law, with the single exception, that the same is not tried before a judge and a jury, but before a judge only; as there is no jury, of course, all the rules and principles relative to the empannelling, swearing, challenging, charging and refusing to .charge the jury, to the separation, misconduct and verdict of a jury, are inapplicable to the trial of an action in equity.
One of the great differences between the former (chancery) and the present mode of trying an issue, in an equity suit, is, that in chancery it was the general rule, that all the testimony (with but few exceptions) must be taken out of court, and the cause heard on such written testimony; whereas, now, the general rule is the same that obtains in the trial of issues at law, viz. that all the testimony must be taken orally before the judge trying the cause. The exceptions, where it need not be taken, orally before the judge trying the cause, apply equally to actions at law as to those in equity.
The parties to a suit in equity must now (except in special cases, which apply as well to actions at law) have their witnesses present in court, at the time the cause is called for trial, so that they may be examined orally, précisely as they are required to have them in an action at law. This being so, I can perceive no reason why a party defendant should not have the same reasonable opportunities to obtain his witnesses, in case they are not present, as are granted to him in an action at law, upon his showing the same grounds to exist therefor. I have shown there is nothing in the principles of equity, or in the practice of the late court of chancery, which would forbid his having such opportunities. The common law rule, requiring witnesses to be examined orally before the tribunal which tries the cause, having been substituted in place of the former equity rule, it must carry with it the right of a party to apply for an opportunity to produce his witnesses, *34 in the mode which then existed and still exists in actions at law, viz. a motion, when the cause is called for trial, for a .postponement of the trial. As a concomitant to this right to move a postponement, there must, also, exist a right to review a.decision denying the motion to postpone, either in such' mode as then obtained in actions at law, or such mode as may have been substituted therefor, since a right, to review a decision denying á reasonable opportunity to procure witnesses, was recognized both at law and in equity; and since the mode of reviewing such decision in equity has become inapplicable, in consequence of the abolition of the chancery mode of taking testimony, and the mode of review in actions at law has become, applicable, in consequence of the substitution of the common law in place of the chancery mode of taking testimony.
It may, however, he suggested, that as equity actions are tried before a judge, without a jury, and as he can have, or can himself extend, his term as long as he pleases; and as he can attend at any adjourned day; and as he will have necessarily heard all the testimony; he can try a cause piecemeal, like a referee, and by adjourning the trial from time to time, do justice to a party who, at the time the trial was called on, was without any, or some one, of his witnesses, and had a good excuse for not having them in attendance; and therefore the rules that apply to actions at law, do not apply to suits in equity—at least, not to their full extent. That full justice may thus be done, in this way, is perhaps doubtful; but, conceding that it could, still, such a mode of trial seems to me incompatible with the spirit and intent of the present Code of Procedure. That spirit and intent is, clearly, that the trial before the court (in which manner actions in equity are to be tried) is, when commenced, to go on de die in diem, the same as trials by jury-. True, the judge may have a discretion as to- suspending a trial to permit the production of a witngag *35 who has unexpectedly left the court room, or to permit the obtaining of testimony, the necessity of which, first became apparent on the trial; but he has the same discretion on atrial by jury. In a trial by the court the suspension may, perhaps, be for a longer period than in a trial by jury, but the discretion to suspend should be exercised with great caution, and in the case of a trial by jury, the sus-pension should never extend beyond the next court day, while in a trial by the court it should never, without the consent of both parties, be for a period longer than two days.
There does not appear to be any substantial reason why, under the present system, there should be any difference between the conduct of a trial by the court and a trial by jury,* save in those matters above referred to, which have reference to the jury and to the length of time for which a trial may be suspended.
No such difference should be inaugurated. A glance at the various terms of the court and the judges assigned to hold them, will show how extremely inconvenient, if not wholly impracticable, it would be for the various judges to extend their special terms into the periods at which they are to hold jury trial or general terms, thus interfering with their other duties, and disarranging the whole business of the court. There is one case in which the judge, either at a trial by the court or a trial by jury, may properly exercise a discretion in extending his term, and this arises from the necessity of the case. It is when a cause, commenced and proceeded with from day to day, is at the expiration of the term unfinished; in such case the term may well be extended so as to enable the cause to be finished, otherwise all the previous labor and time expended on it will be lost. But judges are exceedingly careful to prevent even this cause for an extension of term arising.
One other suggestion may be noticed, that ■ in equity causes, after the judge has made his decision on the trial *36 , before Mm, an account may frequently be ordered by that decision to be taken by a referee, which cannot be taken during the continuance of the term, and therefore there is a necessity for extending a special term, which does not apply to a trial term. But this is not so. The taking of such account by a referee forms no part of the trial. It arises out of, and is founded on the decision made at or after the' close of the trial, but it is an entirely distinct proceeding in the cause. The referee’s report may be confirmed by a judge other than the one who tried the cause. A party dissatisfied with the report must except to it; and those exceptions may be heard and disposed of by a judge other than the one who tried the cause, by either overruling them and confirming the report, or by sustaining them and sending back the matters before the referee, and from an order made in this respect at special term, an appeal will lie to the general term. Finally, judgment in a cause may be entered by a judge other than the one who tried the cause, and other than the one who confirmed the referee’s report; such judgment must be founded on the decision of the judge who tried the cause, and the confirmed report of the referee, and must conform thereto, although it may contain other directions which are necessary to carry out the decision of the j udge who tried the cause.
These principles are fairly deducible from the case of Chamberlain v. Dempsey, lately decided by the Court of Appeals.
It follows from these principles that the taking an account by a referee, pursuant to a decision made by the judge at or after the close of the trial of a cause by the court, the hearing of exceptions to the report of the referee, its confirmation and rendition of judgment, constitute no part of the trial of a cause, but are distinct steps and proceedings in the cause; it is, therefore, wholly unnecessary *37 to extend the term at which the trial is held until these steps and proceedings have been had.
It must, however, be distinctly understood that it is not intended to deny the power of a judge, in an action triable by the court, to commence the trial, and then, with the consent of both parties, to adjourn to a time beyond his then term when he will not be engaged in other duties of the court, and, if necessary, to have his term extended to that time; but this power is one which should be but rarely exercised, even with the consent of both parties, and then with extreme caution. It is, however, intended to distinctly deny the power of a judge in a cause triable by the court, after he has commenced the trial of a cause, against the objection of either party to suspend the trial to a future day, or to extend his term under like objection, for the purpose of going tin with the trial, except, as abové stated, he may suspend the trial for a short time, (say at the furthest two days,) to enable a party to procure * a witness who has suddenly left the court room, or to procure testimony, the necessity of which, first became apparent on the trial, and may also when the trial of a cause has been commenced and proceeded with from day to day, but is not finished at the expiration of the term, extend his term sufficiently long to enable the cause to be finished, proceeding therein from day to day.
I have consequently come to the conclusion, that the practice which, prior to 1846, obtained only in actions at law, of moving to put off a trial for the term, together with the rules and principles which regulated such motion, are now applicable to all actions, whether they are actions which would formerly have been denominated actions at law, or such as would have been denominated suits in equity; and if such motion be denied in an action of the latter class, there is the same right to review the decision as if it was made in an action of the former class.
*38 This point having been established, I will now consider the questions (which were passed for the purpose of considering the one just disposed of) whether the right of reviewing a decision denying a postponement has been taken away, and if not, then in what mode and by what course of procedure such review can now be had ? These questions are so intimately connected that the reasoning applicable to the one, naturally runs into that applicable to the other; they will, therefore, be considered together.
Under the judicial system that existed prior to the adoption of the constitution of 1846, a party defendant who claimed error to have been committed at circuit in refusing his motion for a postponement of a cause, could pursue one of two courses to procure relief from such error.
First. He could voluntarily permit his default to be taken, and then, upon affidavits showing the application made at the circuit, to put off the trial, the papers on which it was founded, its denial, and that an inquest had been taken against him, make a non-enumerated motion'to the Supreme Court to set aside the inquest, (Ogden v. Payne, 5 Cowen, 15;) or he might appear and contest on the merits; and if the cause went against him pursue the same course to obtain a new trial. (Hooker v. Rogers, 6 Cowen, 577.)
Second. He could appear and contest on the merits; and if verdict passed against him, then make a case, and on an enumerated motion to the Supreme Court, move for a new trial on the ground of error in refusing a postponement, as well as on the ground of any other error committed on the trial. (People v. Vermilyea, 7 Cowen, 369, 385.) It cannot be doubted but that every court of record has now, in- causes depending therein, the same power to hear motions and set aside proceedings for irregularity, and review decisions made at a trial, as the former Supreme *39 Court had in causes depending therein, unless such power has been taken away or restricted by some subsequent statutory provision.
I have been unable to find any statutory provision expressly taking away or restricting, either the power to set aside an inquest or default resulting from a denial of a motion to put off a trial, or the power to review such decision, on a motion for a new trial on a case. If either of these powers have been taken away or restricted, it must be because no means have been provided for the hearing of the motion. But I think ample means have been provided. There has been a mere change of the forum in which the motions are to be heard. At one time, in the former Supreme Court, all enumerated and non-enumerated motions had to be heard at a general term of that court. At that time both an enumerated motion for a new trial on a case, and a non-enumerated motion to set aside an inquest had to be made at a general term. Afterwards, in 1830, an act was passed creating special terms of the Supreme Court for the disposal of non-enumerated motions ; and thus the forum for the hearing of these motions (with a few exceptions) was changed from the general to the special term. Afterwards, in 1832, an act was passed requiring certain enumerated motions, among them motions for a new trial, to be made, in the first instance, before a circuit judge. Thus, the forum for hearing these motions, in the first instance, was again changed.
Under the present system, the following enumerated motions, among others, to wit, a motion for a new trial, on a case or exceptions, or otherwise, is to- be heard at a special term or circuit,, in the first instance, except that exceptions may be heard, in the first instance, at a general term, if the judge trying the cause so order at the trial. (Code, § 265.) All non-enumerated motions must be *40 heard at special term, except when otherwise directed bylaw. (Rule 40 of General Rules.) Thus, ample means are provided for the hearing and deciding of all those enumerated motions for a new trial on a case, and all those non-enumerated motions to set aside proceedings which, during the existence of the former Supreme Court, were heard and decided by it.
It is, however, strongly insisted, that a decision made in -a cause by one judge of a court, cannot, on a subsequent proceeding in the same cause, be overruled by another judge of the same court, as the two judges are possessed of equal powers and jurisdiction; and therefore a motion of this character cannot be made at special term, but the relief must be obtained by appeal from the judgment. The right of one judge, on a proceeding before him in a cause, to reverse a decision made by another judge of the same court in the same cause, depends, in a great measure, on the judicial system adopted by a government. This state has, however, chosen to invest one judge, on certain proceedings had before him, with power to reverse a decision made by another judge, in previous proceedings had before him on a motion for a new trial. Thus, section 265 of the Code provides, that all motions for a new trial, upon a case or exceptions, or otherwise, shall be heard, in the 'first instance, at a circuit or special term. Under this section, this court has held that where a motion for a new trial is made at a special term, the judge holding the term, although he may not be the judge who tried the cause, is bound to hear the motion and examine it on its merits; and if he is unable to concur in the views of the judge who presided at the trial, then to reverse his decision, and order a new trial. "Were this not so, parties would be subject to the delay of waiting, until the judge who had presided at the trial held a circuit *41 or special term, or, in this district, until he held a special term. I am aware that the usual course has been, for the judge at special term to deny the motion for a new trial, pro forma; but he is not obliged to do so, although he may be so requested by the parties. And it may be somewhat doubtful whether he has any right to do so. Indeed, in some cases, where it appeared on the face of the order that the motion was denied, p-o forma, the general term has refused to entertain an appeal. At all events, if either party desire it, he is bound to examine the case and make an actual determination of the questions involved.
This reviewing of a decision made by one judge in a cause, by another judge of co-ordinate power in a subsequent proceeding in the same cause, is by no means new. In the time of-the former Supreme Court, one circuit judge was authorized, on a bill of- exceptions, demurrer to evidence or case made, to review a decision made by another circuit judge on the trial of the cause. (Laws of 1832, ch. 188.) Such a review is, therefore, not antagonistic to our judicial system.
How this motion is one which, under the former system, would have been a non-enumerated motion. Its character has not been changed, and it must, therefore, under our present system, be heard at a special term, by the judge who may preside when the motion is moved, and such judge is as much bound to hear it, although it involves a review of a decision made at the trial of the cause by the judge who presided-thereat, as he would be to hear an enumerated motion for a new trial on a case, involving a similar review.
The conclusion to which I have arrived is, that a party defendant who feels himself aggrieved by a refusal to postpone the trial, whether such refusal be made on a *42 trial by jury or a trial before the court, may withdraw from the trial, and if the trial proceeds, and the cause is decided against him, he may, upon affidavits showing the application to postpone, the papers upon which it was founded, its denial, and that a decision has been made against him, make a non-enumerated motion at special term to set aside such decision; he may also remain and try the cause on the merits, and in case of a decision against him, either pursue the same course to obtain a new trial, or may, if the trial was- by jury, under section 265, move at special term on a case, for new trial, alleging as one of the grounds of error the refusal to postpone the trial; or if the trial were by the court, then, under section 268, may appeal direct to the general term, alleging as cause for reversal the refusal to postpone. In this case, the defendant adopted the first course. After the denial of his motion to postpone, he withdrew and suffered a default. They proceeded to take an inquest against him. The trial was finished. The judge decided the-cause against him; and made and filed his decision, in writing. This ended the trial, as I have shown above. The defendant then moved, at special term, to set aside this trial and decision.
Under the views above expressed, the motion was properly made, and should have been heard and decided on its merits. As it was not so heard and decided, the order refusing to do so below, should be reversed. But the authority of the general term, on appeals from orders, is not confined to a simple reversal of affirmance, but it may make such order .as the Special term should.have made in the first instance. I shall, therefore, proceed to examine the matter on the merits, with a view of determining whether the defendant’s motion should have been granted. _ •
*43 [The court then proceeded to examine the case on the merits, and concluded that the order of the special term should be reversed, and the inquest and subsequent proceedings had thereon should be set aside, and a new trial ordered.]
Ordered accordingly.
Barbour, J. dissented.