ODOM, Justice.
 

 Plaintiff prosecutes this appeal from a judgment dismissing her suit on exception of no
 
 *986
 
 cause of action and exception to the jurisdiction of the court.
 

 We learn from plaintiff’s petition that on January 22,1921, she executed an oil and gas lease on 120 acres of land in Union parish in favor of the Erost-Johnson Lumber Company; that the lease was made for a period not exceeding five years, the initial payment therefor being $300 for the first year, with the stipulation that, in case there was no development of the property during the first year, the lease might be extended' from year to year for a period not exceeding four more years upon the lessee’s paying to the lessor an annual rental of $120. The royalty clause for gas reads as follows; “To pay the lessor one eighth (%) for.gas from each well where gas only is found while the same is being used off the premises.”
 

 More than four years later, on September 25, 1924, no development having taken place and the lease having been extended by the payment each year of $120 by the lessee, the original parties entered into a supplemental contract styled “Correction of Lease,” by which the royalty clause was corrected so as to read as follows:
 

 “The lessor shall be paid one eighth (%) of the value of each gas well, calculated at the rate of two cents per thousand cubic feet, corrected to two (2) pounds above atmospheric pressure.”
 

 On January 12, 1925, the Erost-Johnson Lumber Company, the lessee, assigned the lease to Joseph Danciger, who on May 8,1925, procured from the lessor an extension of the lease to January 27, 1929, upon condition that the lessee pay to the lessor the annual rental, of $120. Danciger assigned the lease to L. Garrett, and Garrett in turn assigned it to Erank A. Reed. Reed assigned it to the Industrial Gas Company on January 1, 1928, up to which time there had been no development.
 

 In the latter part of the year 1928, the Industrial Gas Company drilled a well and discovered gas in paying quantities. In January, 1931, the Industrial Gas Company, which had brought in the gas, sold the lease and all rights thereunder, including the gas well, to the Louisiana Gas & Fuel Company, which in turn sold to the United Gas Public Service Company, which now owns it and is taking gas from the well.
 

 From the time gas was discovered by the Industrial Gas Company in 1928, that company and its assigns sold the gas off the premises, and, each month up to August, 1932, a period of about four years, settled with and paid to the lessor the proceeds of one-eighth of the gas extracted at two cents per thousand cubic feet, measured at two pounds above atmospheric pressure, as stipulated in the supplemental or amended lease agreement entered into on September 25, 1924.
 

 No complaint or suggestion of dissatisfaction with the lease contract as corrected was made by the lessor from 1924, the date of the correction, to August, 1932, a period of eight years, during four years of which time she had received annually $120 as rentals and for four years had received payments for royalties, as stipulated in the corrected contract. In the meantime she had witnessed the expenditure by the assignees of the original lessee of the sums necessary to develop the lease.
 

 
 *988
 
 These facts are all set forth in plaintiff’s, petition, which facts we accept as true.
 

 This suit was filed in April, 1933, the main purpose of which was to annul the supplemental contract of September 25, 1924, which amended or corrected the royalty clause in the original lease. It is alleged that, “by virtue of the purported amendment, to the knowledge of the lessee, the royalty provided for in the original lease contract would have been reduced more than fifty per cent (50%) to the injury and detriment of petitioner and for which concessions no consideration whatever was or has been paid * * * that the aforesaid purported amendment was signed by Elizabeth Harris (the lessor) upon the fraudulent representation of the lessee * * * that it was for her interest and to her advantage that the same be signed and executed and that in its execution she was not being deprived of any rights granted to her under the provisions of the original lease contract purported to be amended thereby; that petitioners believe and aver that at the time, and to the knowledge of the lessee * * * the gas was and is now worth more than five times the amount provided for in said amendment, and on which basis, royalty under the provisions of the original contract was and is due your petitioners.”
 

 It is further alleged that the said amendment was null and void to the Knowledge, not only of the original lessee, but to the knowledge of his assigns as well, because “due notice of the illegality of said purported amendment appeared upon its face and was due notice to any one taking or attempting to take any assignment of the rights granted by and under the original lease contract.”
 

 It is further alleged that the difference between the amount paid by lessee for the gas extracted at the price stipulated in the corrected lease and the amount which she would have received had she been paid according to the royalty clause in the original contract exceeded, to the best of plaintiff’s knowledge and belief, the sum of $2,000, the exact amount not being known, and that plaintiff was entitled to judgment for this difference, whatever it might be. She therefore prayed that the amendment to the lease be annulled, and further that the present owner of the lease and the well and its predecessors be ordered to produce their books showing the amount of gas extracted in order that the true amount due her might be determined, and for judgment accordingly.
 

 The present owner of the lease and the well and all its predecessors were made defendants. Each excepted to the jurisdiction of the court in so far as the money demand was concerned, on the ground that they were domiciled elsewhere. Reserving their rights under this exception, they filed exceptions of no right and no cause of action. Both exceptions were sustained, and the plaintiffs’ suit dismissed.
 

 The exception of no cause of action is well founded and was properly sustained. A certified copy of the original lease and of the contract amending it are both attached to, and made part of, the petition. A reading of the amendment shows beyond question that its purpose was to make definite and certain that which in the original lease was indefinite and uncertain. The original lease provided that the lessee should “pay the lessor one eighth (%) for the gas from each well.” This clause
 
 *990
 
 is meaningless. There is no price fixed for the gas, and therefore no basis for the settlement of royalties due to lessor.
 

 Counsel for plaintiff argue that this clause should and would have been construed to mean that it was intended that the lessee was to pay the lessor for her eighth of the gas at its market value when extracted. But the contract does not so provide, and the lessee might have entertained a different view, in wihich event there would certainly have been wrangling and probably a lawsuit. If each had agreed that the market value should be the basis of settlement, then the question of what was the market value would have been open to dispute and probably litigation. The market value of natural gas varies in different fields and at different times. Its market value in a certain field is not necessarily its value in another field, and its value in a certain field on a given date would not necessarily be its value in the same field on a later date. Such uncertain provisions in royalty clauses have been the source of litigation in this state before. Wall et al. v. United Gas Public Service Co., 178 La. 908, 152 So. 561.
 

 The royalty clause in the original lease was so uncertain as to be suggestive of litigation, and the lease was of little, if any, commercial value for that reason. So that it was to the interest of both parties that the royalty clause be made certain, and the parties declared in the supplemental contract that they were “desirous of changing and reforming said royalties, making the payments due thereunder based on a definite pressure and price.”
 

 But plaintiff alleges that this amendment, which fixed a basis of settlement on a definite pressure and price for the gas, was detrimental to her interest, because under it she received less for her gas than she would have received under the royalty clause as originally written. ' It is not alleged, however, that the price of 2 cents per thousand cubic feet for gas was less than the price which prevailed and was customarily paid in that field in 1924, nor is it alleged that the method of measuring the gas at two pounds above atmospheric pressure was not then the usual method. The allegation is that gas was then and is now worth more than 2 cents per thousand cubic feet, and that “two pounds above atmospheric pressure is not a fair pressure basis,” but it is not stated in the petition what a fair pressure basis is or what pressure basis was then customarily used. There is no allegation that the price of 2 cents per thousand cubic feet for gas measured at two pounds above atmospheric pressure is not a serious consideration for the gas, nor is there anything in the petition from which such a conclusion may be drawn.
 

 There are two valid reasons why plaintiffs’ petition sets out no cause of action. One is that the lessor accepted the benefits of the lease as written and amended for more than eleven years before registering her complaints. She received $300 as the initial payment for the lease, and for seven consecutive years thereafter accepted the annual rentals, and in 1928 she stood by and permitted an operating company, which owned the lease by assignment, to take possession of the leased land, erect necessary drilling machinery thereon, and drill to completion a producing gas well and connect it with pipe lines, all at great expense to the owner of the lease. She witnessed all this without murmur or protest.
 
 *992
 
 Not only that; during the four years from 1928, when gas was discovered, until 1932, while it was being sold off the premises, she accepted without protest monthly payments for her one-eighth of the gas at the price and under the measurement stipulated in the amended contract. Under these circumstances, her attack upon the amendment to the lease which she voluntarily entered into cannot be entertained by a court of justice. Her demand is not well founded either in law or in equity. Lieber v. Ouachita Natural Gas & Oil Co., 153 La. 160, 95 So. 538.
 

 Another reason is that the lease as amended passed by mesne conveyances, all recorded in the conveyance records of the parish where the land is situated, into the hands of third persons, who paid the annual rentals and finally entered upon the land and developed the lease according to its terms. The grounds urged by plaintiff for the annulment of the amended lease are not patent on the face of the recorded instrument, and these third persons, who had a right to and did rely upon the public records, are protected by them. Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528; Cole v. Richmond, 156 La. 262, 100 So. 419; Schwing Lumber & Shingle Co. v. Arkansas Natural Gas Co., 166 La. 201, 116 So. 851.
 

 We find no merit in counsel’s árgument that the amendment was void for lack of consideration. The purpose of the amendment was to make definite and certain that clause in the original lease which was indefinite and uncertain. It was to plaintiff’s advantage that this be done, and, if it had been necessary that she receive some consideration for the subsequent contract, that advantage was sufficient.
 

 Having reached the conclusion that the exception of no cause of action is well founded, it is not necessary to pass upon the exception to the jurisdiction. The judgment appealed from is affirmed.
 

 O’NIELL, C. J., takes no part.