74 So.2d 36

## MAGNOLIA PETROLEUM CO.

v.

## MARKS et al.

No. 41248.

May 31, 1954.

Rehearing Denied July 2, 1954.

See also 223 La. 662, 66 So.2d 585.

Clarke & Preis, St. Joseph, Theus, Grisham, Davis & Leigh, Monroe, for appellants.

Vanue B. Lacour, John E. Perkins, Edward W. Jackson, Baton Rouge, Louis Berry, New Orleans, for Jordan heirs.

Philip Watson, St. Joseph, L. E. Hayden, III, Shreveport, Sholars, Gunby & Guthrie, Monroe, for defendants-appellees.

MOISE, Justice.

Magnolia Petroleum Company deposited $25,352.69 in the Registry of the First District Court for the Parish of Caddo, and instituted a concursus proceeding for the purpose of distributing royalties on oil produced from a well on the Northeast Quarter (NE¼) of the Northwest Quarter (NW ¼), Section 29, Township 11 North, Range 10 East, called the Shelley-Marks unit in the Holly Ridge Oil Field of Tensas Parish. The unit contains 40.504 acres.

This litigation involves the royalties due on oil produced from that portion of the unit lying east of Big Choctaw Bayou, containing 18.955 acres, which consists of parts of Lots 5, 6 and 7 of Pin Hook Plantation, per plat of E. E. Scott, C. E., dated October 1938.

Many parties were interpleaded, but we are concerned with the two major interests—namely, the Marks interest and the Jordan heirs. From a judgment of the district court, in favor of the Marks interest and against the Jordan heirs and their two former attorneys, David H. Caplow and G. P. Bullis, these parties have appealed. No appeal was taken by the intervenor, Samuel J. Tennant.

The Jordan heirs assert that the oil producing property involved herein was owned by Henry Jordan, their father and grandfather, and that they acquired it by inheritance from him. They contend that a tax sale of the property, which will be hereinafter discussed, was invalid because the assessment at that time was not in the name of Henry Jordan, deceased, nor that of his heirs.

By an act of December 10, 1887, Henry A. Garrett conveyed to Henry Jordan the following property:

"All that portion of the NE¼ of the NE¼ of Section 29, T 11, Range 10 East, which lies East of what is known as 'Big Choctaw' Bayou, containing fourteen .50 acres of land, being the same 14½ acres surveyed by A. L. Hopkins, Parish Surveyor, on the 30th Nov. 1887, for said Jordan, to which and the accompanying process verbal due reference is hereby made."

It is argued that Henry Jordan actually purchased the NE¼ of the NW¼, instead of the NE¼ of the NE¼, because only the

the NW¼ was east of Big Choctaw Bayou, and the description reads:

"* * * which lies east of what is know as 'Big Choctaw' Bayou * * *"

It is shown that H. A. Garrett, Henry Jordan's vendor, did not own the NE¼ of the NE¼, and he could not have sold such to Henry Jordan.

Article 1945 of the LSA–Civil Code reads in part:

"That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences".

■■ In the case of Snelling v. Adair, 196 La. 624, 199 So. 782, 787, it is stated:

"It is a settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. Thornhill v. Burthe, 29 La.Ann. 639; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; Suthon v. Laws, 127 La. 531, 53 So. 852; Suthon v. Viguerie, 127 La. 538, 53 So. 855; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Tircuit v. Burton-Swartz

Cypress Co., 162 La. 319, 110 So. 489; Harrill v. Pitts, 194 La. 123, 193 So. 562; 13 Cyc. 627; and 36 Cyc. 591. And 'a deed, which was sufficient to convey property as between parties thereto * * * would be sufficient * * * basis upon which to rest plea of prescription of 10 years.' Harrill v. Pitts, supra."

In the case of Cupples v. Harris, 202 La. 336, 11 So.2d 609, the rule above set forth was sustained.

We find the following statement in the case of Thornhill v. Edmund Burthe, 29 La. Ann. 639:

"If the description of a tract of land in an act of mortgage informs the public what property is covered by it, without stating the township or other divisions, it will be sufficient (Consolidated Ass'n of Planters v. Mason, 24 La.Ann. 518), as, for example, where it is described as being on a particular river in a named parish, adjoining named proprietors (Ells. v. Sims, 2 [La.] Ann. 251), *or the bayou* upon which it is situated is named with the parish, the number of acres it contains, and reference is made to the conveyance by which the mortgagor acquired it. Baker v. Bank, 2 [La.] Ann. 371; [City Nat.] Bank v. Barrow, 21 [La.] Ann. 396. It has been said that a distinction may well be made between urban and rural estates in the minuteness and particularity of detail requi-

site for a proper and sufficient description of them, a greater accuracy being required for the former than the latter. [City] Bank v. Denham, 7 Rob. 39. And if a part of the description would mislead, it must be read with and be controlled by other parts which explain it. Marcotte v. Coco, 12 Rob. 167. The error in the number of the range in the description in defendant's mortgage was cured by other descriptive parts thereof which left no doubt of the particular tract that was intended to be mortgaged. * * *" See Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290.

We find further in Emerson v. Cotton, 209 La. 1003, 26 So.2d 16, 19, the following:

"Description of property in deeds must be liberally construed to sustain rather than defeat a conveyance."

In Lawrence v. Young, 144 La. 1, 80 So. 18, it is written in the syllabus by the Court:

"A court will not presume, upon a strained interpretation of a description contained in a conveyance of real estate, that the grantor intended to convey property that belonged to another." See also, Snelling v. Adair, supra.

At the time Henry Jordan purchased the land from Henry A. Garrett, the NE¼ of the NE¼ of Section 29 had been sold by Martin Guthrie to Jordan's son, Perry. We think that the property was readily identified because of Jordan's living on and going into possession of the NE¼ of the NW¼ which was east of the Big Choctaw Bayou, and because of the undisturbed possession through the years that this NE¼ of the NW¼ of Section 29 was the property intended to be conveyed.

It was Mr. Justice Cardozo, in discussing a case, who said:

"We must know the relation of the step to the movement as a whole. One line is run here, another there. We have a filigree of threads radiating from the center and dividing one another into sections and cross-sections. We shall be caught in the tentacles of the web, unless some superintending mind imparts a secret of the structure lifting us to the heights where the unity of the circle will be visible as it lies below."

In these cases the perplexities of the judge become the scholar's opportunity.

After the acquisition by Henry Jordan, hereinabove recited, he was not again mentioned until May 21, 1928, when Fred Skinner made an assignment to Mrs. Bessie S. Goldman of certain judgments rendered in the suits—N. B. Hunter v. Abe Jordan, N. B. Hunter v. Thomas Jordan, and N. B. Hunter v. Perry Jordan—and an assignment of a tax subrogation of Henry Jordan. Skinner legally acquired the aforementioned judgments from N. B. Hunter

and executed on the real estate by means of fi. fas. At a public sale conducted by the sheriff, Skinner acquired the interests of the Jordan judgment debtors. These interests he sold to Mrs. Goldman, in addition to the tax assignments of Henry Jordan. These assignments read:

"And the said appearer further declared to me, Notary, that he hereby transfers to the said Bessie S. Goldman that certain tax subrogation from *Henry Jordan* in favor of appearer, said *subrogation being dated the 23rd of Feby., 1925, and recorded in Mortgage Book 'Z' page 171 of the mortgage records of Tensas Parish, Louisiana, on the 18th of March, 1925,* said subrogation being for the sum of Eighty-two and 80/100ths Dollars ($82.80), and resting on an undivided interest in the real estate hereinabove described.

"And the said appearer further declared to me, Notary, that he hereby transfers to the said Bessie S. Goldman, the following open accounts,

"*Henry Jordan,* balance due on taxes paid for him—$58.58

\*    \*    \*    \*    \*    \*

"And the said appearer further declared to me, Notary, that it is his intent, and he hereby transfers to the said Bessie S. Goldman, all of his rights of every kind or nature against the said Henry Jordan, Narcisie Robinson, Abe Jordan, Tom Jordan, and

Perry Jordan, with full subrogation thereof.

"And the said appearer further declared to me, Notary, that he hereby transfers to the said Bessie S. Goldman that certain note dated March 26th, 1924, for the sum of $200.00 signed by *Henry Jordan,* Narcisie Robinson, Tom Jordan, Perry Jordan, and Abe Jordan, said note bearing eight per cent per annum interest from date until paid, interest thereon having been paid to March 26th, 1926, which said note is secured by mortgage recorded in Notarial Record 'AA' page 29 of the records of Tensas Parish, Louisiana, said mortgage being of date the 26th day of March 1924."

On December 29, 1929, Henry Jordan, a widower, Thomas Jordan, Perry Jordan, Narcisie Robinson and Abe Jordan admitted by notarial act that they were indebted to Mrs. Bessie Spencer Goldman, wife of G. C. Goldman, in the sum of $500, and in order to secure this indebtedness they gave a mortgage on the following described property:

"All of the Northwest Quarter (NW¼) of Section 29 lying East of Choctaw Bayou, and the Southeast Quarter (SE¼) of Section 29 lying East of Little Choctaw Bayou in Township 11 North, Range 10 East, containing Sixty (60) acres, more or less.

"2nd: 'Also an undivided one-half interest in and to the Northeast Quar-

ter (NE¼) of Section 29, and the Northwest Quarter (NW¼) of the Northeast Quarter (NE¼) of Section 19, Township 11 North, Range 10 East, containing 110.00 acres, more or less."

There is nothing in the record to indicate that the $500 mortgage on the property, the $58.58 tax subrogation and the $200 note and mortgage have been paid. In 1928, Skinner sold all of his interest, real and personal, to Mrs. Goldman. He no longer paid Henry Jordan's taxes. Mrs. Goldman put her deed of record by registry.

■  The following is the record chain of title of Pin Hook Plantation:

On November 25, 1933, A. B. Marks purchased for unpaid taxes of 1932, after notice of delinquency, property assessed to Mose Sextion, father-in-law of one of Henry Jordan's granddaughters. This property had been acquired by Sextion from Hiller Land & Trading Company on February 5, 1918, and was described as follows:

"A part of Pin Hook Plantation, being an undivided one-half interest in NE¼ of Section 29, and 20 acres in NW¼ of Section 29, lying south and east of Choctaw Bayou. Also NW¼ of NE¼ of Section 19, all in Township 11, North, Range 10 East, containing 110 acres, * * *"

More than five years have elapsed since this sale, and any defect that might be alleged has been cured by the constitutional peremption of five years. Article X, § 11, Louisiana Constitution of 1921; King v. Moresi, 223 La. 54, 64 So.2d 841; Meshell v. Bauer, 215 La. 619, 41 So.2d 237.

Mrs. Goldman purchased from Fred Skinner "All of the NW¼ of Section 29 lying East of Choctaw Bayou" and the other undivided half of the plantation on May 21, 1928. On October 3, 1931, the Goldman interest was seized and sold by the Tax Collector of Tensas Parish to L. M. Spencer for the unpaid taxes due for the year 1930, after notice of delinquency and compliance with other requisites of law—the property being assessed to Mrs. Goldman, the record owner.

On February 3, 1932, L. N. Spencer sold to Britton & Koontz National Banks, from which Henry M. Marks acquired on December 31, 1935. He also acquired from A. B. Marks, on July 28, 1939, the portion of Pin Hook Plantation which had formerly been owned by Mose Sextion. After having the plantation surveyed into lots by E. E. Scott, Civil Engineer, in October 1938, H. M. Marks made sales of Lots 2 and 7 of the plantation to Wallace Robinson and his wife, Narcisie Jordan Robinson, on June 8, 1939, of Lot 4 to Abe Jordan on October 3, 1939, and of Lot 5 to Abe Jordan, Jr., on February 13, 1940. Wallace and Narcisie Robinson and Abe Jordan, Sr., after executing mortgages to

the Federal Land Bank Commissioner, deeded back to Marks an undivided one-half interest in the oil, gas and mineral rights in Lots 2, 7 and 4. In the deed to Abe Jordan, Jr., Marks reserved a one-half interest in the oil, gas and mineral rights on Lot 5. Abe Jordan, Jr., also executed a mortgage to the Federal Land Bank. Marks deeded to Mose Sextion the lower 72 acres, more or less, of the Pin Hook Plantation on July 22, 1939. Abe Jordan, Sr., died in 1940, leaving Mamie Bolden Jordan (now Cunningham) as his surviving widow in community and sole heir. On March 30, 1942, all of the above parties, Henry M. Marks, Wallace and Narcisie Robinson, Mamie Bolden Jordan, Abe Jordan, Jr., and Mose Sextion, joined in granting an oil, gas and mineral lease upon the entirety of Pin Hook Plantation to Winston L. Stokes, who assigned the same to Tide Water Associated Oil Company and Seaboard Oil Company. On July 8, 1942, Wallace and Narcisie Robinson, Mamie Bolden Jordan and Abe Jordan, Jr., conveyed a one-thirty-second mineral royalty interest on Lots 2, 4, 5 and 7 of Pin Hook Plantation to Winston L. Stokes, who assigned the same to G. D. Hunt and E. R. Whitaker, who in turn assigned a portion of that interest to Walter Keith. On June 11, 1943, Henry M. Marks conveyed four-twenty-thirds of a one-eighth royalty interest, or one-forty-sixth of the whole of the oil, gas and minerals in all of Pin Hook Plantation to Allan Sholars, who assigned the same to R. W. Hair.

The Marks interests allege acquisition in good faith, by just title, and open, peaceable and public possession for more than ten years. They plead the prescription of ten years acquirendi causa and the constitutional peremption of five years, contending that they had acquired bona fide upon faith of the public record without knowledge of matters not appearing thereon, and that as the last record owners they are entitled to receive the impounded royalties.

From a careful study of the record we find that both tax sales were based upon assessments to the last record owners and that notice of delinquency was given to these owners.

■ The law only requires that an owner of record be assessed. Martin v. Serice, 200 La. 556, 8 So.2d 538; Spears v. Spears, 173 La. 294, 136 So. 614; Bell v. Canal Bank & Trust Co., 193 La. 142, 190 So. 359. There was no duty imposed on the tax assessor to make an examination of title. Mrs. Goldman and Mose Sextion were the record owners, and the tax sales were made in their names.

■ The future vendees acquired by faith of the public records, and they are permitted by virtue of the law of registry to rely on such recordations. Westwego Canal & Terminal Co. v. Pizanie, 174 La. 1068, 142 So. 691; Meraux v. R. R. Barrow, 219 La. 309, 52 So.2d 863; Bell v. Canal Bank & Trust Co., supra.

■ There is some evidence of possession in the record, but there is no evidence

of a reasonable certainty after the deaths of Henry Jordan's wife and Henry Jordan himself in 1919 and 1930 respectively. In order for possession to interrupt the constitutional peremption of Article X, § 11 of the Constitution of 1921, such possession must be a constant objection to the tax sale. Kivlen v. Horvath, 163 La. 901, 113 So. 140; Pierson v. Castell Land & Harbor Co., Inc., 159 La. 158, 105 So. 274; Pill v. Morgan,. 186 La. 329, 172 So. 409; DiGiovanni v. Cortinas, 216 La. 687, 44 So.2d 818; and Thurman v. Hogg, 225 La. 263, 72 So.2d 500.

Article X, § 11, of the Constitution of 1921 provides that, after giving notice to the delinquent tax debtor in the manner provided by law, the tax collector shall advertise and sell the property upon which unpaid taxes are due, subject to redemption at any time during three years from date of recordation of the tax sale. All deeds of sale made by tax collectors shall be received by the courts in evidence as prima facie, valid sales. No sale shall be set aside for any cause except on proof of payment of the taxes for which the property was sold prior to date of the sale, unless the proceeding to annul is instituted within five years from date of recordation of the tax deed.

In short, after the lapse of the redemptive period, a tax deed which is regular and in proper form, based upon an actual assessment, conveys a complete and perfect title to the tax adjudicatee as to the world. Under such circumstances, the origin of this complete and perfect title may correctly be said to date from the tax deed, and antecedent defects or missing links in the title become immaterial, or, as stated in Frederick v. Goodbee, 120 La. 783, 45 So. 606, 608, "all prior claims in, to, or against the property are cut off and divested".

In this case the tax deeds are regular in every respect; they recite compliance with all requirements of law and are prima facie valid.

In Bell v. Canal Bank & Trust Co., 193 La. 142, 190 So. 359, 363, 364, this Court held:

"The jurisprudence is clear under the law of registry that a purchaser of real estate in good faith from the owner of record and without notice cannot be affected by latent equities and secret rights which may have existed in favor of former owners of the property dehors the public records. Duson, et al. v. Roos, et al., 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Vestal v. Producer's Oil Company, et al., 135 La. 984, 66 So. 334; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Jackson v. Creswell, 147 La. 914, 915, 86 So. 329; Hughes v. Morrissey, 169 La. 176, 181, 124 So. 772; Harris, et al. v. United Gas Public Service Co., et al., 181 La. 983, 160 So. 785; Jefferson v. Childres,

189 La. 46, 179 So. 30; Rauschkolb v. DiMatteo, supra [190 La. 7, 181 So. 555]; Goldsmith v. McCoy, 182 So. 519, 190 La. 320; and Alliance Trust Co., Ltd. v. Streater Investment Co., 182 La. 102, 161 So. 168."

Appellees' plea of constitutional peremption of five years is good. After the lapse of five years a tax sale is immune from attack, except on proof of prior payment of taxes. King v. Moresi, 223 La. 54, 64 So.2d 841, 842; Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607, 609; Egle v. Constantin, 198 La. 899, 5 So.2d 281, 287.

The record reflects that Louise McTier Jordan, mother of the Jordan heirs, died in 1919, and Henry Jordan, father, died on April 25, 1930. By an ex parte judgment of January 19, 1951, the heirs of Louise McTier Jordan and her husband, Henry Jordan, were put in possession of Lots 1, 2, 3, 4, 5, 6 and 7 of the subdivision of the Pin Hook Plantation.

An ex parte judgment, which recognizes heirs and orders them put into possession of certain immovable property therein described, is not sufficient evidence of their title. Chamberlain v. City of New Orleans, 48 La.Ann. 1055, 20 So. 169. Therefore, the Jordan heirs have no claim by virtue of the judgment of possession.

Since we have sustained the plea of constitutional peremption of five years, we do

not find it necessary to pass on the other contentions raised by the appellees.

The attorneys, David H. Caplow and G. P. Bullis, have no contracts with the Marks interests, and their claims are based on a power of attorney coupled with an interest. The interests in the fund adjudged to be due to Abe Jordan, Jr., and Wallace and Narcisie Jordan Robinson are based on deeds to them from Marks, dated in 1939 and 1940 long prior to the fee agreement for legal services to be rendered. They have acquired nothing by reason of any services rendered to them by the lawyer claimants.

The judgment of the District Court will be affirmed.

Judgment affirmed.