JAMES C. GULOTTA, Judge Pro Tempore.
| ¡¡This matter involves the 1921 tax sale to plaintiff of a certain lot of property-known as Lot 761 situated in St. Charles Parish, Louisiana and containing two hundred and seventy-one acres [also known as Fractional Section Ten (10) in Township 14 South, Range 20 East, Parish of St. Charles, State of Louisiana containing Two Hundred Eighty-Five and 60/100 (285.60) acres, more or less] (“the Property”).
The present litigation commenced with plaintiffs filing of a Petition to Be Maintained in Possession. Plaintiff subsequently filed a Petition for Declaratory Judgment against defendants asserting that it is the legal owner of the Property and is entitled to be recognized as such by virtue of the August 27, 1921 Sheriffs sale. Plaintiff further asserts that, by virtue of La. R.S. 38:1676[1], all right, title, and interest in and to the Property was ratified, quieted, and confirmed in its favor. Alternatively, plaintiff asserts it has acquired title by ten year acquisitive prescription.
14Pefendants answered and filed recon-ventional demands against plaintiff, asserting that the Sheriffs Deed dated August 27, 1921 is an absolute nullity and should be cancelled from the records of St. Charles Parish.
After a trial on the merits, the trial judge found that plaintiff is the lawful owner of the Property “and, as such, are entitled to the right to possession of [the Property] and are entitled to be maintained in peaceable possession of said property.” The trial judge further denied and dismissed “any and all claims asserted by” defendants to the Property and dismissed “any and all claims, exceptions, and/or motions filed by any of the parties hereto which are not hereinabove addressed.” Defendants appeal.
Defendants argue that the trial judge erred in failing to find that there was prior payment and lack of notice, rendering the 1921 tax sale an absolute nullity which can not be remedied. We disagree.
The 1919 Assessment Roll for the Parish of St. Charles indicates that “Legasse Za-phire[2]” (“Lagasse”) was assessed taxes for the Property, including $880.75 under “Special Taxes.” There is also a notation by Lagasse’s assessment stating, “Dr. Not Paid.”
In 1919 Lagasse sold the Property to Alluvial Land Purchase Company, Inc. (“Alluvial”). The sale states that Alluvial, represented by its president, E.P. Brady (“Brady”), “assumes and agrees to pay all past due taxes due and exigible against said land and also assumes payment of the taxes for the year 1919.”[3] (emphasis added)
*1048 The closing took place on October 22, 1919, with Brady appearing “herein as President and for and in behalf of the Alluvial Land Purchase Company, [ ¡¡Incorporated ... and declared and acknowledged that, for and in behalf of said Company he has accepted and does by these presents accept the sale and transfer by Zeph Lagasse to said Company ...”
The record also includes a copy of the October 22, 1919 mortgage of the Property by Alluvial to plaintiff. Alluvial, represented by its president E.P. Brady, recognized the validity of the taxes levied. The document authorized the cancellation of tax liens for the years 1914-1918, “but for no further.”
In 1920, a drainage tax of $3.50 per acre was levied upon lands in Sub-Drainage District No. I.[4] Brady was Alluvial’s president, and the person upon whom all citations and other legal process were to be served, pursuant to Alluvial’s charter. Accordingly, the 1920 Assessment Roll for the Parish of St. Charles assesses Brady, “948.50”[5] for the Property’s 271 acres. In addition to the drainage tax, the following taxes on the Property are listed therein:
State: $4.00
Parish: $5.00
Spec. School: $1.50
Bond: $1.00
School: $1.00
Levee: $5.00
Road # 1: $3.50
The Proces Verbal Tax Sale Deed for the Property is also included in the record. The Sheriff listed the following taxes as due by the tax debtor:
[[Image here]]
LThe Sheriff then stated:
And I, Leon C. Vial, Sheriff and ex-Officio Tax Collector, as aforesaid in accordance with law and the terms of the said advertisements, at the principal front door of the Court House of the Parish of St. Charles, on the 27th. Day of August, 1921, it being the day for said sale named in the advertisement, and after complying with all the legal formalities, did offer for sale the least amount of the above described property that any bidder would buy for the taxes, interest and costs, and there being no bidder for less than the whole of said property, and Mr. V.O. Hill, Secty. And Treas. of The St. Charles Municipal Drainage District No. One bidding the amount of the taxes, interest and costs, it being the sum of Two thousand seventy-three and 60/100 DOLLARS, which amount the said V.O. Hill, Secretary and Treasurer aforesaid, for and is the same of the St. Charles Municipal Drainage District No. One, the said Hill being authorized to bid in said property for said board by a resolution duly passed and adopted by said Drainage Board and which the said Hill paid to me in cash, the receipt of which is hereby acknowledged, the said property was adjudicated to the said St. *1049 Charles Municipal Drainage District No. One.
And further:
[F]or the consideration of the taxes, interest and costs as above set forth, do hereby sell, assign, transfer and deliver a full and complete title in the name of the State of Louisiana, unto the said St. Charles Municipal Drainage District No. One and assigns, all and singular, the above described property and the rights, title and interest which the said E.P. Brady has or had in the same, with the purchaser St. Charles Municipal Drainage District No. 1 to be put in actual possession of the property by any Court of competent jurisdiction.
Following the August 27, 1921 purchase, plaintiff requested and received an order that a writ of seizure and possession be issued, directed to the Sheriff of St. Charles Parish, authorizing and commanding him to seize the Property and place plaintiff in actual possession thereof. The October 4, 1921 “Return of Sheriff’ on the writ indicates that he served a notice to vacate to parties on the Property and “did then and there give written authorization to [plaintiff] Thru William Cadow its Vice President to take possession of the property and did place [plaintiff] thru its Vice President in actual and physical possession of said property.”
|7There is no evidence in the record that Alluvial has ever attacked the 1921 tax sale. It was not until nearly seventy-eight years later, when Huey J. Rivet obtained a “Quitclaim Deed” on July 14, 1999 from Alluvial for “all of the right, title and interest which Alluvial Land Purchase Co., Inc. may have in and to” the Property, that there was a challenge to the 1921 tax sale.
A tax deed is prima facie evidence of a valid tax sale. La. Const.Art. 10, § 11 (1921) and La. Const.Art. 7, § 25 (1974); Virtocom Financial, Inc. v. Palo Verde Trading Co., Inc., 03-621 (La.App. 5 Cir. 2/23/04), 869 So.2d 194. Tax sales are presumed valid and the party attacking it bears the burden of proving its alleged invalidity. Hodges Ward Purrington Properties v. Lee, 601 So.2d 358 (La.App. 5 Cir.1992); Virtocom Financial, Inc. v. Palo Verde Trading Co., Inc., supra. Placing the burden of invalidating the tax sale on the party attacking the sale is based on Louisiana’s public policy favoring the validity of tax sales. Future Trends, LLC v. DeGeorge, 05-355 (La.App. 5 Cir. 11/29/05), 917 So.2d 646.
Grounds for invalidating a tax sale include lack of notice and prior payment of taxes for which the property was sold. See; Richard v. Richard, 04-715 (La.App. 5 Cir. 12/14/04), 892 So.2d 94, writ denied, 05-0120 (La.4/8/05), 898 So.2d 1278; Magnolia Petroleum Co. v. Marks, 225 La. 805, 74 So.2d 36 (La.1954), cert. denied, 348 U.S. 902, 75 S.Ct. 225, 99 L.Ed. 708 (1954).
Defendants argue that the tax deed which is sued upon by plaintiff discloses that the Sheriff only gave notice to E.P. Brady; according to defendants, because there is no evidence of any notices to Lagasse or Alluvial, there is a lack of notice.
We disagree. As stated above, E.P. Brady was Alluvial’s president and agent for service of process. The record includes the proces verbal tax sale deed indicating that the sheriff properly advertised and gave notice of the tax sale to all |interested parties, including E.P. Brady, who was Alluvial’s agent for service of process. Therefore, we find defendants’ argument without merit.
Defendants also assert that there was prior payment of taxes in this case. Defendants argue that the 1919 tax rolls show that Lagasse paid $292.44 in taxes on the numerous properties he owned in St. Charles Parish, and that there was no *1050 “heading” on the tax roll disclosing any assessment for drainage taxes. Further, defendants contend that there was a dual assessment in 1920 because both Lagasse and E.P. Brady appeared on the tax rolls. In summary, defendants contend that there was prior payment of the 1919 and 1920 taxes, rendering the August 27, 1921 tax sale an absolute nullity.
We disagree. The 1919 tax rolls include an assessment of $880.75 under the heading “Special Taxes.” There is also a notation by Lagasse’s assessment stating, “Dr. Not Paid.” Further, the Sheriff listed “Drainage Dist. Tax No. 1 St.Chas.Munic.) 880.75(1919)” on the list of taxes due by the tax debtor in the tax sale. Also, Alluvial specifically assumed payment of the 1919 taxes in the October 22,1919 sale and nothing in the record indicates prior payment of the 1919 drainage tax. Regarding the 1920 tax rolls, the record shows that several taxes, including a drainage tax, were assessed against E.P. Brady for the Property. Further, these same taxes are listed in the tax sale, along with the above 1919 drainage tax. There is no evidence of prior payment of Alluvial’s 1920 taxes. Therefore, we find defendants’ argument also without merit.
Because of our holdings, we find no need to address defendants’ arguments regarding Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), La. R.S. 38:1676, acquisitive prescription, and laches.
|nIn conclusion, we find no error. Accordingly, we affirm the judgment of the trial judge.

AFFIRMED.

. La. R.S. 38:1676 reads in pertinent part:
Where drainage districts organized under Article 15 of the constitution of 1921, and R.S. 38:1601 through 38:1675, have acquired property located in said districts at tax sales made by the sheriffs and ex-officio tax collectors of the parishes wherein such sales were made, and the three year period in which the property may be redeemed shall have expired, that all right, title, and interest in and to said property be and the same is hereby ratified and confirmed unto said districts, and the said districts shall have the right to sell at public or private sale, said lands in whole or in such parts as may be deemed proper and advisable by said districts, and under such terms and conditions as may be deemed advisable by said districts.

. Legasse is spelled with an "a” elsewhere in the record.

. The record contains a copy of a resolution adopted by the Board of Directors of Alluvial Land Purchase Company, Incorporated au *1048 thorizing the president of the company to "assume for the Company payment of all taxes due and exigible against said property and also the taxes for the year 1919."

. We note that the Property is in Sub-Drainage District No. 1.

. We note that 271 acres at $3.50 per acre equals $948.50.