OVERTON, J.
 

 This suit comes before us, under our supervisory jurisdiction, from a judgment refusing to grant a preliminary injunction to John Paul Vazquez, to restrain the civil sheriff of the parish of Orleans and others from selling, under executory process, certain real property situated in the parish of Orleans, and claimed by Vazquez as owner. Vazquez proceeded by third opposition in this case, to assert his claim to the property and to obtain the injunction. By order of this court the Phoenix Building & Homestead Association has been substituted in place of E. Favre Hughes as the plaintiff' herein.
 

 It appears from the evidence adduced on the trial of the rule to show cause why the injunction should not issue that Vazquez desired to erect a house on a lot, owned by him in the city of New Orleans,-and applied to the Phoenix Building & Homestead Association to lend him the money for that purpose. For some reason the building and loan association did not care to mane the lqan to Vazquez. Later Vazquez returned to the office of the association, bringing with him Ralph Romano. Romano, with the full knowledge of Vazquez, made application to the association for a loan of $4,200, for the put-pose of erecting a house on the same lot on which Vazquez had applied for a loan. It was stipulated in the application that Vazquez was to be the contractor for the erection of the building, and it was understood that he was to transfer the property to the homestead association, for the account of Romano. Something over a month after the application for the loan was made, namely, on April 19, 1923, Vazquez, by notarial act, transferred the lot with such improvements as there were on it to the homestead association for the recited consideration of $990 cash, which in all probability was not paid, at least by the association. On the same day, Vazquez entered into a contract with the homestead association to erect for it on the lot, which it had purchased from Vazquez, a double one-story composition roof .building. The building, in due course, was erected, and the homestead association paid to Vazquez, out of the proceeds of the loan made by it to Romano, the contract price for the erection of the building. When the building was completed Vazquez moved into one half of it, and rented the other half, but without making any arrangement with the homestead association, • and, so far as appears, though unsuccessful attempts have comparatively recently been made to eject him, has occupied the building ever since.
 

 The title to the property remained in the name of the homestead association for approximately five years. Payments were made on the loan, from time to time, during that period, and the payments were acknowledged, in practically every instance, in a passbook issued in the name of Romano. In one instance, Vazauez called on the attorney for the homestead to make a payment on the
 
 *179
 
 loan, asking at the same time that the receipt be issued to him, but the attorney refused to recognize him in the matter, and to accept the .offered payment, unless the receipt was issued to Romano, and it was so issued.
 

 In 1924, some of the amounts due on' the loan had not been paid. The attorney for the homestead association wrote three letters, addressed to Romano, in which he referred to the loan as haying been made to Vazquez, and asked Romano to see that Vazquez made the payments, and another letter to Mr. E. V. Richard, in which he says that he notes that Vazquez will settle the claim. Vazquez stresses these letters as showing a written acknowledgment by the homestead association that the loan was made to him, and not to Romano., However, there is nothing whatever to show that the attorney had authority to make any such acknowledgment. Moreover, the acknowledgment is in direct conflict with the application for the loan, which shows that the loan was made to Romano and is in conflict with the consistent refusals of the homestead association, from the beginning, to recognize the loan as one made to Vazquez. In fact, the homestead association held Romano’s note for the loan. The attorney explains these letters by saying that, when they were written, he was confused as to tho status of the loan, due to the fact that at that time Vazquez was frequently calling upon him in regard to it. We think that these letters are not entitled to any weight.
 

 In 1928, five years after the loan was made, the homestead association, at the request of Romano, for whom it was holding the property, and to whom it had made the loan, sold the house and lot to Mrs. Thomas M. Mor-rissey for $5,600, for which she gave her note, secured by special mortgage and vendor’s privilege. Mrs. Morrissey became delinquent in her payments on the mortgage. The note, given by her, was thereafter transferred to E. Eavre Hughes, who was the president of the homestead association at the time, and in whose place the association has been substituted as plaintiff herein. Hughes, of course prior to the substitution, proceeded by executory process against Mrs. Morrissey to foreclose the mortgage, given by her to secure the purchase price of the property. It is in that suit that Vazquez filed the opposition, under consideration, to enjoin the sale of the property on the ground that the transfer to Mrs. Morrissey is fraudulent, and that the facts show.a fraudulent conspiracy to deprive him of his property.
 

 We fail to find the fraud alleged. Unquestionably, Vazquez transferred by notarial act, by deed absolute on its face, the property to the homestead association. The evidence shows, we think, that the homestead association was to hold this property for the account of Romano. The association made the loan to Romano, and not to Vazquez, and took Romano’s note for it. It did these things with the full knowledge of Vazquez. The association, prior to any sale made by it, was not averse to retransferring the property to Vazquez, provided Romano would sign a document releasing the association from all liability to him for so doing, but Romano refused to do so. The association was called upon eventually to transfer the property either to Vazquez, or to Romano, or to the person designated by him. Naturally, it followed the latter course and transferred the property to the person designated by Romaho, for it was understood, at the time the property wasi transferred to -the ássociation, that it was to be held for the account of Romano, and it was Romano to whom the loan was made,, and from whom the note therefor was taken. As to Romano, the record is vague. If he was guilty of any fraud, the evidence
 
 *181
 
 ■does not disclose it. We do not know wliat the arrangements between him and Vazquez were concerning the property. As to Mrs. Morrissey, the only evidence of fraud on her part is the allegation in the petition that she is the sister of Romano, and the allegation characterizing the sale to her as “fraudulent,” supported by the affidavit of Vazquez the petitioner, without stating the ultimate facts upon which the legal conclusion, as to the fraudulent character ,of the sale, is based, which we deem insufficient. Besides this, the homestead association was the record owner of the property. Mrs. Morrissey, or any third person, had a right to deal with the association, concerning the property, on the faith of the public records. As the records showed that the association was the owner of the property, she had the right to deal with the association as the owner, and if, in doing so, she purchased the property, which she did, her title would be valid. Matters outside of the recorded deed, and not of record, cannot be pleaded against third persons, nor does mere knowledge, not obtained from the records, where it exists, of the right of the record owner to sell, constitute such fraud as cuts down everything. McDuffie v. Walker, 125 La. 152, 51 So. 100; Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528; Cole v. Richmond, 156 La. 262, 100 So. 419; Schwing Lumber & Gas Co. v. Arkansas Nat. Gas Co., 166 La. 201, 116 So. 851.
 

 We are not prepared on the record before us to say that the trial judge abused his discretion in refusing to issue the injunction. In .order to be entitled to the injunction, Vazquez should have shown that he was the owner either of the property or of the note, upon which executory process issued. He has shown neither. If the property was to be held for Romano’s account, so also was the note.
 

 The judgment under review is affirmed.