LAND, Justice.
 

 In this suit plaintiff seeks to have declared null and void and canceled two
 
 *49
 
 sales of a 40-acre tract in Bossier parish of this state. The first sale is of date March 16, 1934, and purports to have been made by plaintiff to Mary Childers, femme sole, by notarial act, and for a cash consideration of $400. The second sale is of date January 31, 1936, arid purports to have been made by Mary Duke Childers to S. L. Brown, for a consideration of $200 cash, and a note secured by vendor’s lien and special mortgage on the property for $1,000.
 

 The first sale is attacked on ,the ground that the signature thereto had been fraud7 ulently obtained by defendant, J. E. Childers, acting for his wife and codefendant, Mary Childers, by representing to plaintiff, an aged and illiterate colored woman, that he desired her to sign an affidavit with reference to the matrimonial status of certain persons living near the home of plaintiff in Bossier parish.
 

 In the alternative, plaintiff alleges that neither Mary Childers, nor J. E. Childers, nor any other person has paid to her any consideration for the transfer of the property, and therefore the deed is null and void.
 

 Pleading further in the alternative, plaintiff avers that, should this court find that she was not fraudulently induced to execute the deed and that the consideration was the agreement of the vendee, Mary Childers, to pay plaintiff, then, in that event, Mary Childers and her agent acting for her, J. E. Childers, defrauded plaintiff by agreeing to pay the consideration therefor, and induced plaintiff to-sign the deed, when, in fact, they did not pay plaintiff the consideration mentioned therein, upon her execution of the instrument, and thereafter fraudulently refused to do so.
 

 The attack made by plaintiff against the second sale, made by Mary Duke Childers to S. L. Brown, is that she was then married to J. E. Childers, and that the sale was purely and simply a simulation intended to place the property beyond the reach of plaintiff.
 

 On January 23, 1936, eight days prior to the sale made by Mary Duke Childers to S. L. Brown, Justin R. Querbes, trustee, obtained a mineral lease from the record owner on the forty acres in dispute, and intervened in this suit to assert and protect his rights as lessee.
 

 The case was tried and judgment rendered in favor of plaintiff and against defendants,. Mary Childers, J. E. Childers, and S. L. Brown, decreeing null and void the deed from plaintiff to Mary Childers, and from Mary Duke Childers to S. L. Brown; and .in favor of intervener, Justin R. Querbes, and against plaintiff and defendants, decreeing the oil and gas lease from Mary Childers to intervener valid and subsisting and decreeing plaintiff entitled to the rentals deposited by intervener in the registry of the court. T. 158.
 

 Defendants only have appealed from this judgment.
 

 (1) The deed from Laura Jefferson, plaintiff, to Mary Childers was dated March 16, 1934, and was recorded in the conveyance records of Bossier parish on April
 
 *51
 
 6, 1934. On its face,' it is a cash deed reciting a consideration of $400, by authentic act, passed before George T. Mc-Sween, notary public in and for Caddo parish, La. On January 23, 1936, intervener, Justin R. Querbes, leased the property herein involved, for exploration for and production of oil, gas, and other minerals, from Mary Childers, the record owner of the property and the vendee of plaintiff. This lease was filed for record the same day.
 

 Plaintiff alleges that she executed the deed to Mary Childers (petition, par. 1, T. 19), and seeks to have same set aside on allegations of fraud practiced by the husband of the vendee, and of nonpayment of consideration. This she cannot do to the prejudice of intervener, a third person, who relied upon the public records in taking the mineral lease.
 

 In Waller v. Colvin, 151 La. 765, 92 So. 328, 329, this court said:
 

 “Under Civ. Code, Arts. 2236, 2266, relative to the recording of contracts, and the admissibility of parol testimony, in a suit to reform recorded deeds from defendant to C., an4 from C. to plaintiff, who purchased from C, on the faith of the records, oral evidence was not admissible to show fraud on C.’s part in obtaining the deed, or to show that the act of sale was intended as a donation omnium bonorum, and therefore void, or that no consideration was paid.”
 

 While the defendants, Mary Childers and her husband, J. E. Childers, and S. L. Brown, have appealed from the judgment rendered in this case, their appeal as to intervener can have no effect, and, obviously, was not so intended, because in their answers they have admitted all of the essential allegations of the petition of intervener. (Answer of Childers, T. 70; answer of Brown, T. 74.)
 

 The plaintiff has not appealed from the judgment in favor of intervener and against her, nor has she answered the appeal of the defendants. As to the judgment rendered on the merits after the trial of the case, plaintiff cannot now have the judgment in favor of intervener and against her set aside, as plaintiff has not appealed or answered the appeal of defendants. Code Prac. arts. 592, 888.
 

 (2) Here plaintiff seeks to annul her deed to defendant, Mary Childers, intervener’s lessor.
 

 Intervener’s cause of action is based upon the estoppel resulting from the execution by plaintiff of a deed placed upon the public records upon which he relied in taking the oil and gas lease, and he is clearly entitled to invoke that estoppel, as he acted in good faith and relied upon the public 1 records. Getman v. Harrison, 112 La. 435, 36 So. 486; Thompson v. Hibernia Bank & Trust Co., 148 La. 57, 86 So. 652; Lognion v. Fontenot, 121 La. 901, 46 So. 914.
 

 The lessee of an oil and gas lease has an action against his lessor, the landowner, to have the validity of his lease judicially determined. Smith v. Kennon, 188 La. 101, 175 So. 763.
 

 Even if plaintiff is successful in her suit against defendant, she can only re
 
 *53
 
 cover the property subject to transactions affecting it made by her apparent vendee with third persons acting in good faith. In effect, she becomes the lessor of intervener, to the same extent as though she had been the original lessor.
 

 Intervener is not urging the petitory or possessory actions. Therefore, plaintiff’s exception of no cause of action to the petition of intervention, based on the doctrine of Gulf Refining Co. v. Glassell, 186 La. 190, 171 So. 846, is inappropriate and was properly overruled in the lower court.
 

 (3) The contentions of the plaintiff are that her signature to the deed to “Mary Childers, femme sole,” of date March 16, 1934, was obtained by fraud. Upon reaching Shreveport, Laura Jefferson, plaintiff, and Jim Hamilton, her son, state that they got out of the car near the foot of Texas street and went up to the office of the notary, Mr. McSween, where she touched the pen to a paper, which she thought was an affidavit, but which later developed into the deed in question.
 

 On the other hand, the defendants contend that they brought her to town in order to make the purchase from her, and that they secured her signature legitimately.
 

 The deed was passed before George -T. McSween, notary public for the parish of Caddo, on March 16, 1934.
 

 The deed from Laura Jefferson to Mary Childers was handed to Mr. McSween on the witness stand and identified by the witness, who testified as follows:
 

 “Q. Did you draw that deed up? A. I did.
 

 “Q. Did Laura Jefferson make her cross on it? A. She did.
 

 “Q. Who wrote her name on there? A. I did.
 

 “Q. And witnessed her signing? A. Yes, sir.
 

 “Q. Did she sign? A. Yes, sir.
 

 “Q. Did you read that deed over to her? A. I dictated that deed to Miss Peggy Herndon who was working for me and who was in my office, then Laura Jefferson and Jim Hamilton were seated there in my office when I dictated it to her, and I dictated it in a loud voice and whether I read it back to her or not, I don’t know. I have never seen Laura Jefferson except that one time. She and Jim Hamilton came to my office with Mr. Jim Childers and he said he wanted to buy forty acres of land that was in the name of Thomas Jefferson, and he told me he wanted to buy it in someone’s else name and took it in the name of Mary Childers. They were all sitting there when the deed was made up. Jim Hamilton touched the pen and there was no intimation that they were not selling the property. His mother knew she was selling the property. There was no money passed, .however, that I saw. That was regular enough. They were there only a short time.”
 

 Jim Hamilton and his mother both had testified that they had gone to the office of Mr. McSween to make an affidavit with respect to the Lawson heirs, in connection with the property known as the
 
 *55
 
 Charlotte Scott property, and when they touched the pen, they thought that it was this affidavit, and did not know that it was the deed in question. In referring to this testimony, Mr. McSween testified as follows:
 

 “Referring to the testimony of Jim Hamilton, which he gave here on the stand today. As a matter of fact, he was present in the office only one time with his mother. Probably a week or two weeks later, he, Jim Hamilton, came back there and employed me to open the succession of Charlotte Scott. I asked him questions about the heirs of Charlotte Scott and he was very vague as to what he knew about the old people, and I asked him why he didn’t talk to his mother and get the information from' her. I think he must have made two or three trips there and I therefore think he is confused as to this deed because he knew the deed was to this land. Pie made several trips there about the other matter.”
 

 Mr. McSween further testified:
 

 “Q. Laura Jefferson was not there with him on the matter of the Charlotte Scott property? A. No, sir. She was never in my office, that I have knowledge of, except on that occasion. She came 'in and sat down and Mr. Jim Childers said he wanted to buy the land and she said she wanted to sell the land. I dictated the deed to the stenographer and of course discussed it. She was sitting close by and heard it. I have a small office and we were all sitting in there.” T. 126, 127.
 

 Mr. George .T. McSween is not only a notary public, but is a reputable member of the bar, and also holds the office of secretary of the state bar examining committee. He is also personally known to the members of this court. We unhesitatingly accept, as true and trustworthy, his testimony as to the circumstances surrounding the confection of the deed in question. It is clear from bis testimony that Laura Jefferson and Jim Hamilton both' knew they were selling the land, and were signing, at the time, the deed conveying it. •
 

 The testimony of Laura Jefferson, though 80 years old, shows that her mind was clear, and that she fully knew all about the land in dispute; its location, and her title to it. Though illiterate, she was an intelligent witness,
 

 (4) However, in our opinion, the deed from Laura Jefferson to “Mary Childers, femme sole,”- of date March 16, 1934, was properly decreed null and void, for failure of the vendee to pay the purchase price of $400 recited as a cash payment in the act. After execution of this act, J. E. Childers took Laura Jefferson and her son, Jim Hamilton, back to their home in Bossier parish in his automobile. He testified that on the way he stopped at Daley Brown .Grocery Company, Inc., 125 Texas street, in the city of Shreveport, and got $350 to pay the purchase price of the sale, and that the balance was paid in groceries and taxes on the property. Both Laura Jefferson and her son emphatically deny that she received one cent of the purchase price, or any groceries from Childers, at that time, or at any other
 
 *57
 
 time. They further deny that Childers paid any taxes on the property.
 

 The testimony of Childers was further discredited by three prominent citizens of Bossier parish: Mr. Mercer, former president of the police jury of that parish; and Mr. Raines and Mr. Haughton, all of whom testified that Childer’s reputation for truth and veracity was bad, and they would not believe him on oath. T. 214, 218, 222.
 

 Among the witnesses placed on the stand by Childers was one Bob Fuller, colored, who testified that he was in Daley Brown Grocery Company’s place of business in March, 1934, and saw Childers hand Laura .Jefferson a roll-of bills; that it looked “like a good big stack, three or four hundred dollars.”
 

 The witness remembered the exact month, three years ago, when Childers paid Laura Jefferson the money, and that it was about three or four hundred dollars; a fact that this witness could not possibly know by merely. seeing a roll of bills handed by Childers to Laura Jefferson. T. 189.
 

 Unfortunately for Bob Fuller, he was born and reared on the plantation of Mr. W. C. Raines, a Bossier planter, who took the witness stand and testified that his reputation for truth and veracity was bad and that he' would not believe him on oath. T. 219, 220.
 

 Rayfield Davis, another witness for Childers, states that he saw the same transaction; that “it looked like two or three hundred dollars”; that he was a grocery porter; that it was about the 15th or 16th of March, 1934 (the exact date of the sale of Laura Jefferson to Childers) when the payment was made. T. 183-185:
 

 That these witnesses should testify to the date of the deed, and to amounts approximating the consideration of the sale, when they pretended to see nothing but a roll of bills handed by Childers to Laura Jefferson, are suspicious circumstances in themselves. The testimony of neither.of these witnesses upon its face is credible, and one of them is directly impeached by Mr. Raines.
 

 If it be a fact that the payment of $350 was actually made by Childers to Laura Jefferson at the place of business of Daley Brown Grocery Company in Shreveport, it is remarkable that witnesses of this character should be called upon to support the testimony of S.. L. Brown, Daley Brown, his brother, and a clerk, as to the payment in question. S. L. Brown is a defendant to this suit, and is an interested witness, whose testimony in the case as to other matters is conflicting and contradictory. The conduct of Childers in this case has been of a devious character from the very beginning. When the deed was drawn, he insisted on having it made to “Mary Childers, a. femme sole,” when she was, in fact, his wife at the time; and later on, attempted to show that the deed was made to her to replace $400 which her uncle had given her at the time of her marriage; but Childers did not place his wife on the witness stand to corroborate his testimony; which has been thoroughly discredited in the case.
 

 
 *59
 
 The trial judge who saw and heard these witnesses testify in this case did not accept their testimony as credible, and we do not find any good reason for not arriving at the same conclusion.
 

 (5) We are also of the opinion that the deed from Mary Duke Childers to the defendant, S. L. Brown, of date January 31, 1936, was a simulation.
 

 S. L. Brown, at the time, was drawing a salary of $100 per month, and had a wife and two children to support. He had no property. The consideration stated in the deed is $1,200; $200 cash, and the balance in one note of the purchaser, dated with the act, to the order of the vendor, due January 31, 1937, and by the purchaser indorsed in blank, for the sum of $1,000, which note hears 8 per cent, interest from date and is paraphed “Ne Varietur” of the date of sale by the notary, to identify same with the act.
 

 The evidence shows that the price agreed to be paid by Brown greatly exceeded the value of the land and the minerals. The property at the time, being subject to a mineral lease in favor of the intervener in this case, could not have been worth over $500. Brown never took possession of the property, and knew nothing about its condition whatever.
 

 Brown testified that he paid the money in cash, but that he had no receipt or evidence to substantiate the transaction. The next day, however, he produced in court a receipt, signed by J. E. Childers, showing that he had paid the money. T. 125. As remarked by the district judge, when counsel for plaintiff tactlessly objected to the introduction of the receipt, this was the best evidence of fraud.
 

 Although the deed recites that S. L. Brown paid $1,200 for this property, he had no idea where it was located, who lived on it, who had the note', whether it was subject to an oil and gas lease, how much it was worth, or anything else about it. See Depositions of Brown, T. 95.
 

 The sale in question is clearly a simulation, and the deed was properly decreed to be null and void by the court below.
 

 (6) However, as the recorded authentic act of sale shows a consideration upon its face and bears no prima facie evidence of fraud, an innocent purchaser, or holder, of the mortgage note of $1,000 for value received, before maturity, is necessarily protected in his reliance upon the faith of the public records.
 

 This mortgage note is outstanding in the hands of Mr. A. L. Waller, of Shreveport, La., representative of the Case people who obtained the note as ’ security for a first payment on a tractor, bought by Henry Burton and delivered to him. Burton acquired the note from J. E. Childers for valuable consideration, and A. L. Waller, who is not a party to this suit, acquired the note as security in December, 1936, before maturity, and for a first payment on the tractor of $553. See testimony of A. L. Waller, T. 132-136; testimony of Henry Burton,
 
 166-178.
 

 
 *61
 
 For the reasons assigned, it is ordered that the judgment appealed from be affirmed, and that defendants pay all costs.
 

 It is further ordered that whatever rights A. L. Waller may have, as holder of the mortgage note of $1,000 on the property sold by Mary Duke Childers to S. L. Brown, January 31, 1936, be and are hereby reserved.
 

 HIGGINS, J., absent.