## GILMER et al. v. STINSON et al.
### No. 6047.

Court of Appeal of Louisiana. Second Circuit.

April 4, 1940.

Rehearing Denied May 3, 1940.

Dimick & Hamilton, of Shreveport, for appellants.

Wallace & Stinson, of Benton, and Frederick E. Greer, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiffs are the sole heirs of their mother, Mrs. Lila M. Gregg Gilmer, who died intestate on or about March 18, 1902, in Bossier Parish. At the time of her death, by inheritance from her mother, she owned Lot No. One (1) of Sec. 6, Twp. 16 N, R. 10 W, in the parish of Bossier, which contains thirty-three (33) acres.

Her succession was not formally opened, nor were her heirs judicially recognized.

On June 11, 1904, this land with another tract of eighty (80) acres was adjudicated to Beverly A. Kelly for the unpaid taxes of the year 1903 under an alleged assessment in the name of W. T. Gilmer, father of plaintiffs.

Beverly A. Kelly died intestate on March 27, 1914. His succession was opened in Bossier Parish and his widow and heirs were recognized as such and sent into possession by judgment of the district court of that parish on December 29, 1921. The widow's name is Eudocia Fort Kelly. The heirs were William F. Kelly, Beverly A. Kelly, Jr., Corinne Kelly, an interdict, whose curator was her mother, and Mrs. Camille Kelly McCorquodale.

The interest of Corinne Kelly in her father's estate was judicially adjudicated to her mother in 1922.

In 1923 William F. Kelly sold his interest in his father's estate to S. E. McCorquodale, B. A. Kelly, Jr., and Mrs. Irma S. Kelly, wife of said B. A. Kelly, Jr., in specified proportions.

On November 26, 1932, the lot in dispute, with numerous other tracts, aggregating approximately 1,500 acres, was sold by the tax collector of Bossier Parish for delinquent taxes of the year 1931, to R. T. Stinson under an assessment in the name of Mrs. E. F. Kelly et al. The tax deed to Stinson was registered on December 8, 1932.

On May 20, 1935, R. T. Stinson conveyed unto Mrs. Camille K. McCorquodale and unto S. E. McCorquodale fractional interests in said lot, and other lands formerly belonging to the estate of Beverly A. Kelly, deceased.

On December 31, 1935, R. T. Stinson instituted in the district court of Bossier Parish a monition proceeding to have confirmed and validated as against all irregularities, etc., the tax deed to him. Judgment was rendered as prayed for.

On July 10, 1936, Mrs. Eudocia Fort Kelly and William F. Kelly executed a quit claim deed without warranty of any character, unto R. T. Stinson, S. E. McCorquodale and Camille K. McCorquodale, conveying unto them in specific proportions said Lot No. One (1) and the numerous other tracts herein referred to.

The present suit was filed on August 3, 1936. The plaintiffs seek to have themselves decreed owners of said lot of land and attack both of the tax sales thereof and the monition proceedings, including the judgment thereunder, as being nullities and wholly without effect as to them. R. T. Stinson, S. E. McCorquodale and the widow and heirs of Beverly A. Kelly, deceased, were made defendants.

S. E. McCorquodale died after service herein. His sole heir, Mrs. Beverly McCorquodale Leith was substituted as party defendant in lieu of him.

We have reached the conclusion that the tax sale to Stinson invested him with a title to said lot which is now invulnerable to plaintiffs' attack. Therefore, we shall enumerate, discuss and pass on the various grounds of attack leveled against that sale only. The grounds of attack are:

1. That the land was not assessed to its true and lawful owners, nor in the manner required by law, for the year 1931.

2. That no notice of delinquency to the true and legal owners was given.

3. That neither Stinson nor his transferees has had possession of the land; that plaintiffs' possession thereof has never been relinquished or abandoned.

4. That the assessment in the name of Mrs. E. F. Kelly et al. was not legal as such, because she was not the true owner of the property.

5. That Stinson and his grantees were aware that the widow and heirs of B. A. Kelly had no valid title to said lot; that the tax sale and purported ratification thereof were designed to create in Stinson, for the benefit of said widow and heirs, a good title thereto, and at the same time divest petitioners of their title; that the tax sale was a mere simulation, concocted to accomplish said purposes.

Defendants excepted to the petition as disclosing neither a cause nor a right of action. The exception of no cause of action was sustained and the suit ordered dismissed. This ruling was reversed after granting a new trial and thereafter the exceptions were overruled. They are reurged in answer to the merits and here. Since the case is with defendants on the merits, the exceptions will not be further discussed nor passed upon.

Defendants generally deny the basic attack allegations of the petition and affirm the validity of the tax sale to Stinson and the assessment thereunder made. They specifically deny that plaintiffs were in possession of the land at the date of said tax

sale or thereafter. They plead the prescription of five, ten and thirty years in bar of plaintiffs' right to recover, and pray that plaintiffs' demand be rejected and that they be decreed the owners of the land in question and entitled to possession thereof.

Plaintiffs' demand was rejected; defendants, R. T. Stinson, Mrs. Eudocia Fort Kelly, Mrs. Camille Kelly McCorquodale and Mrs. Beverly McCorquodale Leith, were decreed owners of the land and entitled to its possession. Plaintiffs prosecute appeal.

The exact reasons for allowing the large acreage belonging to the widow and heirs of Beverly A. Kelly, deceased, et al., to sell for delinquent taxes in 1932, does not appear. It is certain this was not done to defraud or defeat the rights, real or otherwise, of the plaintiffs in and to the lot in question. They have no interest whatever in the other tracts sold, aggregating about 1,500 acres, nor in the dozens of lots in the town of Benton included in the sale. Had it been desired to eliminate the claims of plaintiffs to said lot of land, taxes on all other tracts would have been paid and only this lot allowed sold for its proportion of the unpaid taxes. Since no fraud or injustice was practiced, or intended to be practiced against plaintiffs in connection with the tax sale, they are without standing to challenge its validity if otherwise legal.

The fact remains that the lot was correctly described under the assessment to Mrs. E. F. Kelly et al. on the 1931 roll, was advertised for sale the required length of time and was lawfully adjudicated at public sale to Stinson for unpaid taxes. It is conceded that Mrs. Kelly and her co-owners were given timely notice of the delinquency of the taxes and of the purpose to sell the land therefor. As surviving widow in community and as the usufructuary of her children's interests in the property in question, the duty of paying the taxes rested upon her personally. Civil Code, Art. 678.

But plaintiffs contend that the tax sale is null and void as to them because they are the true owners of the land, and, therefore, notice of delinquency of the taxes and of the tax sale should have been served upon them. We are clear in the opinion that this position is not well founded.

Beginning with the year 1905, the land (though described incorrectly at times) was regularly assessed to B. A. Kelly and taxes thereon paid by him until his death. Thereafter, excepting a few years, the land was regularly and correctly assessed to Mrs. E. F. Kelly et al. Taxes under said assessments were paid by her. And, as said, prior to the tax sale she and her children were judicially recognized as widow and heirs of Beverly A. Kelly and were sent into possession of all the property, rights and credits left by him. Inventories made contained the lot in question.

On the other hand, from the year 1904 until the present time, so far as the record discloses, plaintiffs were not assessed with nor did they pay any taxes whatever on the land. There was nothing of record to even indicate they had or claimed to have an interest therein. Their father, through tenants, intermittently cultivated some ten acres of the tract until about the year 1924, since which time, until the spring of 1936, no semblance of possession thereover has been exercised by plaintiffs. The once cleared portion is now covered with second growth pine trees.

Sec. 11 of Art. 10 of the Constitution of 1921 provides that there shall be no forfeiture of property for non-payment of taxes, "but at the expiration of the year in which said taxes are due, the collector shall, without suit, *and after giving notice to the delinquent in the manner provided by law,*" advertise for sale, etc.

Regarding the manner and method of assessing real property, Sec. 25 of Act 170 of 1898, among other things, provides: "And in all cases property assessed in *the name of the owner as appears on the record* of the mortgage or conveyance office at the date of listing *shall be deemed properly assessed.*"

In pari materia, Sec. 53 of the same Act, in part, reads: "That for the purposes of taxation and tax sales it shall be sufficient to assess and advertise all property in the name of the person or persons whether dead or alive, who at the time the assessment was made, appeared to be the owners thereof upon the books of the conveyance office, in the parish of Orleans, or of the recorder's office in the other parishes of the State."

Sec. 50 of the said Act, concerning the steps to be taken by the tax collectors precedent to advertising real property for sale for delinquent taxes, in part, reads: "That on the second day of January, 1899, and each subsequent year,

or as soon thereafter as possible, the tax collector or sheriff shall address to each *tax-payer* who has not paid all the taxes which have been assessed to him on immovable property, written or printed notice in the manner provided for in Section 51 that his taxes on immovable property must be paid within twenty days after the service or mailing of said notice, or that said property will be sold according to law * * *."

And Sec. 51 sets out the manner the above mentioned notice shall be served on "the tax payer" in the country parishes. It must be sent to him by registered mail at his postoffice address, as shown on the tax roll.

It will be noted that a person to whom real estate is assessed, when taxes thereon are due, is referred to in the Constitution as the "delinquent", while the Act refers to him as "the tax payer". In listing property for assessment purposes, the Act directs that the assessor be governed by the official records and to assess land in the name of the owner "as appears on the record", or who, at the time the assessment is made, "appears to be the owner thereof" upon the conveyance records, etc. The designations "the delinquent" and "the tax payer" in the sense used, are in reality synonymous. However, all "tax payers" are not "delinquents", but the converse is not true. Both have reference to the person assessed and that person should be the owner as reflected from the official records.

■ The law does not require the assessor, as a condition to a valid assessment, to make search de hors the official records to ascertain who might or might not claim to own or to have an interest in a given parcel of land. Such a requirement would be absurd as well as unreasonable. The law does exact that each person owning real estate make annual return thereof to the assessor for taxing purposes. If he does not do so, the assessor has the right to list the property for taxes and to place a value thereon.

■ Neither does the law require the tax collector to do more than is contained therein to apprise "tax payers" of the delinquency of their taxes. He necessarily must be governed by the contents of the rolls made up by the tax assessor. When he literally complies with the law as to mailing notices, etc., the basis for a legal sale is laid. Carey v. Green, 177 La. 32, 147 So. 491.

As to who is the "delinquent" or the "tax payer", within the purview of the Constitution and statutes, has been settled by the courts of this state in more than one case.

In Kivlen v. Horvath, 163 La. 901, 113 So. 140, it was specifically held that: "Before a valid tax sale of property can be made, the owner of record is entitled to notice of delinquency and intention to sell, such owner being the delinquent tax debtor, within the meaning of Const.1921, art. 10, § 11, requiring giving notice to the delinquent before making the sale."

In Spears v. Spears, 173 La. 294, 303, 304, 136 So. 614, 617, the plaintiffs, two sons of the second marriage of their father, J. B. Spears, instituted suit to recover one-fourth interest each in lands in Union Parish. The lands had previously been sold by the surviving widow (mother of plaintiffs) individually and as tutrix and by three major heirs of J. B. Spears to W. S. Spears, also heir and co-owner. W. S. Spears sold the land to W. M. Green, in whose name it sold for taxes for the year 1921 and was bought in by the defendant, Stephenson. In upholding the validity of the tax sale, the court said: "The defendant, A. G. Stephenson, asserts title by virtue of a tax sale made under an assessment in the name of W. M. Green, on June 17, 1922, for the taxes of 1921, conveying the N. W. 1/4 of N. W. 1/4 and the N. W. 1/4 of S. W. 1/4 of Sec. 8, Tp. 23 N., R. 1 W. The title was recorded on the day the tax deed was passed. Green acquired the land from W. S. Spears, and, as his title was recorded, he was the owner of record. It is urged that the tax sale is null, because plaintiffs were not given notice of delinquency. *Plaintiffs, however, were not the owners of record of any interest in the land, and therefore could not demand notice. It suffices for the validity of a tax sale that notice be given to the owner of record,* and it does not appear that notice was not given to such owner. The presumption is that it was. We fail to find any defect in the sale. Therefore Stephenson is entitled to this land, for the tax sale is valid."

In that case the tutorship proceedings leading up to and on which was based the purported divestiture of the minors' interest in the land was annulled; the

effect being that the plaintiffs' interest therein had not been legally transferred. They were the owners of such interest at the time of the tax sale but lost same through that sale although no notice of the delinquency of the taxes or of the advertisement of the property for sale was given them.

This case was recently followed by our brothers of the First Circuit in Spikes v. O'Neal et al., 193 So. 487, in which it is held: "Children who claimed their deceased mother's community interest in realty, which was recorded only in the name of the father, were not entitled to attack sale of realty for delinquent taxes because they were not given notice of the delinquency. Civ.Code, art. 578; Act No. 140 of 1890, § 2; Act No. 170 of 1898, § 50."

 If the law was otherwise than as announced in these cases, confidence in titles based on tax sales would largely be destroyed because their stability as muniments of title would be undermined. A purchaser at tax sale could not feel secure in his title until the lapse of five years. Heirs and others to whom not assessed, could, as is attempted in this case, come into court and recover the property and thereby create confusion and difficulties in the way of adjustments for improvements, rents, etc., simply because notice of delinquency, etc., was not served on them. The law does not encourage nor countenance such possibilities. On the contrary, its policy is to bolster the prima facie evidence of validity which the Constitution declares should be accorded to tax sales.

 Beverly A. Kelly, within the meaning of the laws above quoted, became the record owner of the property in question, and on his death, in view of the mortuary proceedings mentioned, his widow and heirs, and their assigns, moved into that status. The tax assessor was not required to look beyond the official records pertinent to said succession and the transfers between the parties in order to determine to whom the land should be assessed. The tax collector, likewise, owed no duty to plaintiffs or any one else, to look beyond the contents of the official assessment roll to determine to whom notices of delinquency, etc., should be given. Mrs. E. F. Kelly (et al.) was the "delinquent" or "tax payer" and property

er notices having been given her, the ends of the law were met.

For the reasons herein given, the judgment appealed from is affirmed with costs.