92 So.2d 377 (1956)
231 La. 594
ESSO STANDARD OIL COMPANY
v.
Abe JORDAN, Jr., et al.
No. 42717.
Supreme Court of Louisiana.
December 10, 1956.
Rehearing Denied January 21, 1957.
*378 Vanue B. Lacour, Baton Rouge, Louis Berry, New Orleans, for appellants.
Young & Watson, St. Joseph, Sholars, Gunby & Guthrie, Monroe, for defendants-appellees.
SIMON, Justice.
Esso Standard Oil Company provoked two concursus proceedings[1] to distribute royalty interests due from oil purchased by it for its pipeline, produced from two wells, both of which were drilled and operated by the same lessee under the same mineral lease within a short distance of each other on the same tract of land, known as Pin Hook Plantation, in the Parish of Tensas.
In the instant suit, plaintiff deposited in the registry of the district court the sum of $2,031.60, representing royalty interest due from oil purchased by and delivered to petitioners during the period from March 1, 1951 through the month of August, 1951, which oil was produced from a well located in the SE¼ of the NW¼ of Section 29, Township 11 North, Range 10 East, Tensas Parish.
In the companion suit, No. 42,718 on the docket of this Court, petitioners deposited the sum of $2,563.58, representing royalty interest due from oil purchased by and delivered to petitioners during the period of March 1, 1951 through August, 1951, and which was produced from a well located in the NW¼ of the NE¼ of Section 29, Township 11 North, Range 10 East, Tensas Parish.
Many parties were interpleaded, but we are concerned only with the two major interests, namely, the Marks Claimants, appellees, and the Jordan Heirs, appellants, the members of each group appearing in the written reasons for judgment of the trial court.[2]
There is no conflict or dispute among the members within the two respective groups. The controversy is between the Jordan Heirs, appellants, and the Marks Claimants, appellees.
The Marks Claimants assert as basis for their claim of title to the land and/or mineral and royalty rights therein and to the funds on deposit herein two tax sales made in 1931 and 1933 to parties under whom the Marks Claimants hold title, which tax sales were allegedly based on assessments to the last record owners of portions of the plantation lands or undivided interests therein.
*379 The Jordan Heirs assert their ownership by virtue of the alleged nullity of the tax sales, contending that the assessments were not made in the name of the true owner, Henry Jordan, deceased, or that of his heirs; and that notices of delinquencies were not served on either. They claim inheritance from Henry Jordan, the deceased ancestor of appellants.
Appellants also assert the physical possession of said property and the filing of certain lawsuits, which were later dismissed and abandoned, as effecting an interruption or suspension of prescription applicable to tax sales.
To counter the attack on the said tax sales, the Marks Claimants pleaded the peremption or prescription of five years provided in Article 10, Section 11 of the Constitution of 1921, LSA and the laws of registry, contending that they acquired titles in good faith and in full reliance on the public records. The appellees deny that the Jordan Heirs are the legitimate heirs of the deceased Henry Jordan.
Appellants filed a plea of lis pendens, which was overruled below. They also filed reconventional demands for judgment for other and different funds than those deposited, which demands were stricken and dismissed as not bearing upon the issue presented in these two companion proceedings.
Appellees further pleaded as res judicata and judicial estoppel the judgment rendered by us on appeal in the case of Magnolia Petroleum Company v. Marks, 225 La. 805, 74 So.2d 36, which pleas were denied by the lower court.
Inasmuch as both concursus suits presented the identical issue, and the evidence relating thereto was the same, they were consolidated for purposes of trial.
After trial below, judgments were rendered in favor of the Marks Claimants, from which the Jordan Heirs perfected separate appeals to this Court.
Both suits have also been consolidated for purposes of determination by us; and, inasmuch as these appeals appear in two different records bearing two different numbers on our docket, we shall render separate decrees.
Stripped of all irrelevant and lateral tangibles, the primary question presented in these two appeals is the validity vel non of the tax sales of 1931 and 1933.
The record discloses that Pin Hook Plantation consists of the NE¼ and all of NW¼ lying East of Choctaw Bayou in Section 29 and S½ of SE¼ lying East of Little Choctaw Bayou in Section 20, Township 11 North, Range 10 East, Parish of Tensas.
The record further discloses that by act of December 10, 1887, Henry A. Garrett conveyed to Henry Jordan the following property:
"All that portion of the NE¼ of the NE¼ of Section 29, T 11, Range 10 East, which lies East of what is known as `Big Choctaw' Bayou, containing fourteen .50 acres of land, being the same 14½ acres surveyed by A. L. Hopkins, Parish Surveyor, on the 30th Nov. 1887, for said Jordan, to which and the accompanying process verbal due reference is hereby made."
In the Magnolia case, supra, we concluded that by said act of December 10, 1887, Henry Jordan actually purchased the NE¼ of the NW¼ instead of the NE¼ of the NE¼, because only the NW¼ was east of Big Choctaw Bayou and thus conformed with the description as to location hereinabove stated. We further concluded that at the time the deed was executed calling for the NE¼ of the NE¼ of Section 29, that said quarter section had been sold by Martin Guthrie to Perry Jordan; that the NE¼ of the NW¼ was the property actually purchased by Henry Jordan and that he took actual possession thereof and possessed the same undisturbed through many years.
It appears from the record that by deed dated May 21, 1928, one, Fred Skinner, *380 made an assignment to Mrs. Bessie S. Goldman of certain judgments rendered in the suitsN. B. Hunter v. Abe Jordan, N. B. Hunter v. Thomas Jordan, and N. B. Hunter v. Perry Jordanand an assignment of a tax subrogation of Henry Jordan, the aforementioned judgments having been acquired by Fred Skinner from N. B. Hunter and which was subsequently executed upon by a seizure and sale. At said public sale Fred Skinner acquired the interest of the Jordan judgment debtors. Thereupon, he sold and conveyed these interests to Mrs. Goldman, in addition to the tax assignments covering the property owned by Henry Jordan. This deed of May 21, 1928 was duly placed of record by registry in the conveyance records of Tensas Parish, the situs of the property involved.
The property was thereupon assessed to Bessie S. Goldman for taxes on the Tensas Parish assessment roll for 1930. Upon her failure to pay the taxes so assessed, said property was seized by the tax collector, advertised, and, after giving to the delinquent tax debtor the notice required by law, sold by the tax collector to L. M. Spencer by deed dated October 3, 1931 and duly placed of record.
The assessment on which the sale to L. M. Spencer was based described the property as follows:
A part of Pin Hook Plantation; all of NW¼ of Section 29 lying East of Choctaw Bayou, and the SE¼ of Section 20 lying East of Little Choctaw Bayou, Township 11 North, Range 10 East, containing 60 acres; also an undivided half interest in NE¼ of Section 29, and the NW¼ of NE¼ of Section 19, Township 11 North, Range 10 East, containing 110 acres.
The property so acquired at tax sale by the said Spencer was transferred by him on February 3, 1932 to Britton & Koontz National Banks. On December 31, 1935, the said bank, through receivership proceedings and acting through its receiver, transferred said property to Henry Marks.
It also appears that on February 5, 1918, Mose Sexton (sometimes spelled "Sextion"), father-in-law of one of Henry Jordan's granddaughters, acquired from Hiller Land & Trading Company the following described property:
A part of Pin Hook Plantation, being an undivided one-half interest in NE¼ of Section 29, and 20 acres in NW¼ of Section 29, lying South and East of Choctaw Bayou. Also NW¼ of NE¼ of Section 19, all in Township 11 North, Range 10 East, containing 110 acres.
This undivided interest was duly assessed to Mose Sexton as the record owner thereof upon the assessment roll of Tensas Parish for the year 1932. Upon his failure to pay the taxes so assessed for that year, the property was sold by the tax collector for the unpaid taxes due for said year, after notice of delinquency and compliance with the requisites of law, and purchased by A. B. Marks by sheriff's deed dated November 25, 1933 and duly recorded.
The assessment on which the sale to A. B. Marks was based described the property as follows:
A part of Pin Hook Plantation, being an undivided one-half interest in NE¼ of Section 29, and 20 acres in NW¼ of Section 29, lying South and East of Choctaw Bayou. Also NW¼ of NE¼ of Section 19, all in Township 11 North, Range 10 East, containing 110 acres.
On July 28, 1939, the said property so acquired at tax sale by A. B. Marks was purchased by Henry M. Marks by deed dated July 28, 1939 and duly placed of record.
In October, 1938, Henry M. Marks caused the Pin Hook Plantation to be surveyed into seven lots, numbered 1 to 7, inclusive, and a tract on the lower side containing 72 acres, more or less. On June 8, 1939, he sold Lots 2 and 7 of the plantation to Wallace Robinson and his wife, Narcissa Jordan Robinson; on October 3, 1939, Lot 4 to Abe Jordan; and on *381 February 13, 1940, Lot 5 to Abe Jordan, Jr. It appears that thereafter Wallace and Narcissa Jordan Robinson and Abe Jordan, Sr., reconveyed to Henry M. Marks an undivided one-half interest in the oil, gas and mineral rights in Lots 2, 7 and 4 so acquired by them as aforestated. It also appears that in the acquisition of Abe Jordan, Jr., of Lot 5, Henry M. Marks reserved a one-half interest in the oil, gas and mineral rights therein; the said Henry M. Marks deeded to Mose Sextion the lower 72 acres, more or less, of the Pin Hook Plantation, by deed executed on July 22, 1939. Abe Jordan, Sr., died in 1940, leaving Mamie Bolden Jordan (now Cunningham) as his surviving widow in community and sole heir. On March 30, 1942, all of the above parties, Henry M. Marks, Wallace and Narcissa Robinson, Mamie Bolden Jordan, Abe Jordan, Jr., and Mose Sextion, joined in granting an oil, gas and mineral lease upon the entirety of Pin Hook Plantation to Winston L. Stokes, who assigned the same to Tide Water Associated Oil Company and Seaboard Oil Company. On July 8, 1942, Wallace and Narcissa Robinson, Mamie Bolden Jordan and Abe Jordan, Jr., conveyed a one-thirty-second mineral royalty interest in Lots 2, 4, 5 and 7 of Pin Hook Plantation to Winston L. Stokes, who assigned the same to G. D. Hunt and E. R. Whitaker, who in turn assigned a portion of that interest to Walter Keith. On June 11, 1943, Henry M. Marks conveyed four-twenty-thirds of a one-eighth royalty interest, or one-forty-sixth of the whole of the oil, gas and minerals in all of Pin Hook Plantation to Allan Sholars, who assigned the same to R. W. Hair.
In the Magnolia case, supra, a concursus proceeding filed to determine the ownership of royalty interest due from a well located on the NE¼ of the NW¼ of Section 29, the primary issue presented involved the validity of the same tax sales presented in the instant case. We found that the tax deeds were regular in every respect, that they recited a full compliance with all requirements of law and therefore were prima facie valid.
In the instant case we fail to find any reason, either in law or in fact, which would cause us to alter or change the principles of law enunciated in the Magnolia case, supra, which we deem applicable here.
It cannot be successfully disputed that Mrs. Goldman and Mose Sextion were the record owners of the property at the time of the tax sales and that the property here involved was assessed in their respective names. The tax sales were made in their respective names as the assessed owners. The law only requires that the assessment be in the name of the record owners. Ashley Co. v. Bradford, 109 La. 641, 33 So. 634, and authorities therein cited; Spears v. Spears, 173 La. 294, 136 So. 614; Bell v. Canal Bank & Trust Co., 193 La. 142, 190 So. 359; and Martin v. Serice, 200 La. 556, 8 So.2d 538.
Further, the law does not demand, as a condition to a valid assessment, that an assessor must search beyond the official records to ascertain who might or might not claim to own or to have an interest in a given parcel of land; nor is an assessor called upon to be the judge as to the holder of a superior title as between conflicting claimants. All that the law exacts as a valid assessment is that it be in the name of him who appears, upon the record, to be the owner. Ashley Co. v. Bradford, supra; Lisso & Bro. v. Police Jury, 127 La. 283, 53 So. 566, 31 L.R.A., N.S., 1141; and Louisiana Land & Improvement Co. v. Police Jury, 156 La. 849, 101 So. 241.
It has long been the recognized jurisprudence of this state that the delinquent tax debtor to whom notice of delinquency must be given is the last record owner, the only one entitled thereto. Griffing v. Taft, 151 La. 442, 91 So. 832; Kivlen v. Horvath, 163 La. 901, 113 So. 140; Spears v. Spears, supra.
*382 In Martin v. Serice, supra, we recognized the uniform jurisprudence to be that assessments are to be made to the record owner at the time the assessment is made, and notice of delinquency must be given to the owner of record at the time of advertisement and sale for taxes.
The fundamental reason underlying these principles of law is adequately expressed in Gilmer v. Stinson, La.App., 197 So. 299, 303, which expression we readily endorse, as follows:
"If the law was otherwise than as announced in these cases, confidence in titles based on tax sales would largely be destroyed because their stability as muniments of title would be undermined. A purchaser at tax sale could not feel secure in his title until the lapse of five years. Heirs and others to whom not assessed, could, as is attempted in this case, come into court and recover the property and thereby create confusion and difficulties in the way of adjustments for improvements, rents, etc., simply because notice of delinquency, etc., was not served on them. The law does not encourage nor countenance such possibilities. On the contrary, its policy is to bolster the prima facie evidence of validity which the Constitution declares should be accorded to tax sales."
The acquisition of Henry M. Marks from the original tax purchasers and the subsequent deeds of acquisition by his vendees and their privies, which comprise the Marks Claimants and appellees herein, unquestionably show that the respective acquisitions of the lands comprising Pin Hook Plantation were bona fide purchases, having been purchased upon the faith of the public records and in reliance on the law of registry. Westwego Canal & Terminal Co. v. Pizanie, 174 La. 1068, 142 So. 691; Meraux v. R. R. Barrow, Inc., 219 La. 309, 52 So.2d 863; Magnolia Petroleum Co. v. Marks, supra.
In the case of Bell v. Canal Bank & Trust Co., supra, we held [193 La. 142, 190 So. 363]:
"The jurisprudence is clear under the law of registry that a purchaser of real estate in good faith from the owner of record and without notice cannot be affected by latent equities and secret rights which may have existed in favor of former owners of the property dehors the public records. Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Vestal v. Producers' Oil Company, 135 La. 984, 66 So. 334; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Jackson v. Creswell, 147 La. 914, 915, 86 So. 329; Hughes v. Morrissey, 169 La. 176, 181, 124 So. 772; Harris v. United Gas Public Service Co., 181 La. 983, 160 So. 785; Jefferson v. Childers, 189 La. 46, 179 So. 30; Rauschkolb v. Di Matteo, supra [190 La. 7, 181 So. 555]; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; and Alliance Trust Co., Ltd., v. Streater Investment Corp., 182 La. 102, 161 So. 168."
The contention of the Jordan Heirs that their having physically possessed the subject property and remained in possession thereof continuously from the date of the tax sale, suspended or interrupted the running of prescription is without evidential support.
We considered this same question in the Magnolia case and concluded that "there is no evidence of a reasonable certainty [of possession by the Jordan Heirs] after the deaths of Henry Jordan's wife and Henry Jordan himself in 1919 and 1930 respectively. In order for possession to interrupt the constitutional peremption of Article X, § 11 of the Constitution of 1921, such possession must be a constant objection to the tax sale." [225 La. 805, 74 So.2d 41.] Pierson v. Castell Land & Harbor Co., Inc., 159 La. 158, 105 So. 274; Kivlen v. Horvath, supra; Pill v. Morgan, 186 La. 329, 172 So. 409; Di Giovanni v. Cortinas, 216 La. 687, 44 So.2d 818; and Thurmon v. Hogg, 225 La. 263, 72 So.2d 500.
*383 In Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528, we held that possession by one claiming to be the owner of property was insufficient to put those acquiring title thereto on faith of the record upon inquiry or to prove that they acted in bad faith in purchasing this property.
Article X, section 11, of the Constitution of 1921 provides that, after giving notice to the delinquent tax debtor in the manner provided by law, the tax collector shall advertise and sell the property upon which unpaid taxes are due, subject to redemption at any time during three years from date of recordation of the tax sale. All deeds of sale made by tax collectors shall be received by the courts in evidence as prima facie, valid sales. No sale shall be set aside for any cause except on proof of payment of the taxes for which the property was sold prior to date of the sale, unless the proceeding to annul is instituted within five years from date of recordation of the tax deed.
In short, after the lapse of the redemptive period, a tax deed which is regular and in proper form, based upon an actual assessment, conveys a complete and perfect title to the tax adjudicatee as to the world. Under such circumstances, the origin of this complete and perfect title may correctly be said to date from the tax deed, and antecedent defects or missing links in the title become immaterial, or, as stated in Frederick v. Goodbee, 120 La. 783, 45 So. 606, 608, "all prior claims in, to, or against the property are cut off and divested". Magnolia Petroleum Company v. Marks, supra.
After the lapse of five years, as is here the case, a tax sale is immune from attack, except on proof of prior payment of taxes, which proof has not been offered in the instant case. The plea of constitutional peremption of five years, urged by appellees, is good and, therefore, sustained. Egle v. Constantin, 198 La. 899, 5 So.2d 281; Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607; and King v. Moresi, 223 La. 54, 64 So.2d 841.
We are constrained to conclude that the two tax deeds here in question, evidencing, as they do, a full compliance with all requirements of law and the delays for redemption having long since expired, standing alone and unaided, suffice to vest title to all of the lands therein described in L. M. Spencer, purchaser in the 1931 tax sale, and A. B. Marks, purchaser in the 1933 tax sale, and their successors in title, appellees herein, the latter being fully protected in their titles so acquired under the third purchaser rule and the law of registry.
Having upheld the validity of the tax deeds and the plea of prescription and peremption, we find it unnecessary to pass upon the plea of res judicata and judicial estoppel submitted by the appellees. In fact, appellees conceded in their brief that should we sustain the validity of said tax deeds in every respect, the plea of res judicata and estoppel need not be considered and disposed of by us.
In their answer to the appeal, in addition to their prayer for affirmance of the judgments appealed from, appellees prayed for damages for frivolous appeal on the ground that appellants had prosecuted this appeal for the sole purpose of delay.
Under our law and jurisprudence, appeals are favored and aided by the courts. State ex rel. Durand v. Parish Judge, 30 La.Ann. 282; First Nat. Bank of Ruston v. Lagrone, 164 La. 907, 114 So. 832; Pool v. Gaudin, 207 La. 403, 21 So.2d 424. One against whom a final judgment has been rendered in a cause in which an appeal is given by law, is entitled to an appeal as a matter of right. La.Code of Practice, Art. 565.
The right to be heard on an appeal taken from a judgment in its nature appealable does not depend on the merits of *384 appellant's case. Board of School Directors of Caldwell Parish v. Meridith, 140 La. 269, 72 So. 960.
After considering the appeal herein on its merits we conclude that said appeal is not frivolous and that damages claimed by appellees should be denied.
The record discloses that the following changes of parties have taken place since the institution of these suits:
Henry M. Marks died during the pendency of these suits, and his widow and executrix of his estate, Mrs. Emma M. Marks, was substituted for the deceased.
Narcissa Jordan Robinson died during the pendency of these suits, and Grady Robinson, the administrator of her estate, was substituted for the deceased.
R. W. Hair died during the pendency of these appeals, and his surviving widow, Mrs. Hilda M. Hair, and his sole heir, Mrs. Linda H. Sievers, by motion are substituted for the deceased and made parties defendants-appellees herein.
E. R. Whitaker died during the pendency of these appeals, and his testamentary executor, J. F. Vaughan is, by motion filed in this Court, substituted for the deceased and made a party defendant-appellee.
We note for the sake of the record that attorneys E. E. Ewing, Harry Fuller and Samuel J. Tennant, Jr., were also interpleaded but failed to answer or appear. Default judgment was rendered against them. David H. Caplow and Mrs. Mary Bullis, former attorneys of the Jordan Heirs, failed to appear for trial, and judgment was rendered against them. None of the attorneys appealed and no claims or issues as to them are before the Court.
The trial court, in its reasons for judgment, designated the parties entitled to participate in the distribution of the impounded funds and therein set forth their respective pro rata interests. The parties therein named who have since died are to be substituted by parties in their respective capacities as above noted.
Accordingly, for the reasons assigned, the judgment of the trial court is amended to substitute Mrs. Hilda M. Hair and Mrs. Linda H. Sievers for the deceased R. W. Hair, and to substitute J. F. Vaughan, testamentary executor of E. R. Whitaker, for E. R. Whitaker.
In all other respects the judgment of the trial court is affirmed.
HAWTHORNE, J., absent.
McCALEB, Justice (concurring).
I am in full accord with the majority decision. However, I do not think it is essential that we reconsider the issues raised in this case, which are identical to those adjudicated in the case of Magnolia Petroleum Company v. Marks, 225 La. 805, 74 So.2d 36. That case, in my opinion, is res judicata of this one.
I respectfully concur.
NOTES
[1] The instant case and No. 42,718, entitled Esso Standard Oil Company v. Henry M. Marks, 231 La. ___, 92 So.2d 384.
[2] (a) The Marks Claimants are, in Suit No. 42,717: Succession of Henry M. Marks, R. W. Hair, Mose Sexton, Jane Wexler Stein, Bessie S. Goldman, George S. Goldman, Jr., H. T. Goldman, Philip Watson, George Gunby, George D. Hunt, E. R. Whitaker, Walter Keith and Abe Jordan; and in Suit No. 42,718: Succession of Marks, R. W. Hair, E. R. Whitaker, George D. Hunt, Walter Keith, J. G. Seamon, Philip Watson, Georga Gunby, Mamie Bolden Jordan, Gordon Cunningham, Abe Jordan, Jr., and Grady Robinson.

(b) The Jordan Heirs, in both suits are: Narcissa Jordan Robinson, Elmira Bradshaw, Henry E. Jordan, Mary Jordan Webb, Louise Jordan, Mildred Jordan, Perry Webb, Wilbert Jordan, Carrie Jordan Carter, Louella Jordan Taylor, Truly Jordan, Wash Jordan, Rosetta Jordan Sexton, Lucille Jordan Bradshaw, Maggie Jordan Campbell, Lieutenant McGraw, Hattie Jordan, Mattie Jordan, Tom Jordan, Mary Ann Saul, through her curator, General Saul, Mattie Pritchard, through her curatrix, Martha Jordan.